NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAGDISH PATEL and KISHAN PATEL,** | |
| **Plaintiffs,** | Civ. No. 2:14-cv-08127 (WJM) |
| **v.** | |
| **JIGNESH PANDYA; KRUPA PATEL; JNP FOODS, LLC; RONAK FOODS, LLC; SHREE SIDDHIVINAYAK, LLC; HARIDRA, LLC; SRI PRATHAMESH, LLC; CT PIZZA, LLC; EDISON PIZZA; JONE/JANE DOES 1-10; and XYZ COMPANIES 1-10,** | **OPINION** |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.**

Plaintiffs Jagdish Patel ("Patel") and Kishan Patel bring 11 fraud-based and breach-of-contract claims against Defendants Jignesh Pandya ("Pandya"), Krupa Patel ("Krupa"), and a number of LLCs that Pandya owns. Plaintiffs' allegations revolve around an alleged financial fraud that has elements of a Ponzi scheme. Currently before the Court is a partial motion to dismiss for failure to state a claim. For the reasons set out below, the motion is **DENIED**.

## I.    SUBJECT MATTER JURISDICTION

This Court has federal question jurisdiction over Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* Additionally, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over all of Plaintiffs' state law claims inasmuch such claims are related to Plaintiffs' claims under 18 U.S.C. § 1961, *et seq.* and form part of the same case or controversy. This Court also has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because Plaintiffs are citizens of New

Jersey and Defendants are citizens of Pennsylvania and Connecticut and because the amount in controversy exceeds the sum of $75,000.00 dollars.

## II.   BACKGROUND

Plaintiffs allege the following facts. Patel met Defendant Pandya in 2010. Pandya introduced himself as a successful financier and the owner of many profitable commercial properties in the United States and India. He befriended Patel after learning that Patel hoped to invest money that his children, including Plaintiff Kishan Patel, had recently inherited. Eventually Pandya proposed that Patel join him in purchasing nine Pizza Hut franchises in Connecticut (the "Connecticut Deal"). The parties agreed that Patel would pay $350,000 for 25% of CT Pizza, an LLC established to own and operate the franchises. Pandya gave Patel inflated estimates of the profits that these franchises would make. When Patel asked for more financial information, Panya and his associate, Krupa, would redirect Patel to each other to evade his request. Krupa is also the "office manager" of "many" of the other Defendant Corporations. See Compl. at ¶ 38.

Around July 12, 2010 Pandya told Patel that he immediately needed Patel's share in cash to close the deal. Patel wrote a check that day. Pandya retrieved the money but never used it for the Connecticut Deal, instead using it to become a full owner of the franchises, while leading Patel to believe that he owned a 25% stake. Pandya and Krupa ignored and evaded Patel's attempt to secure the closing documents. They attempted to deceive Patel by, for example, giving him a check for approximately $34,000, meant to represent a 25% share of the Connecticut franchises' profits from August 21, 2011 to December 31, 2011. See Compl. at ¶ 13, 90. Yet Plaintiffs never actually owned the 25% stake. When the franchises began to falter, Pandya repeatedly requested more money from Patel. Pandya also told Patel that he bought the liquor licenses separately and so Patel still owed his share of the costs, which amounted to $135,000. Although Patel believed the licenses were already included in the Connecticut Deal, he gave Pandya the requested sum around August 4, 2011.

In October 2011, Patel and Pandya attended a Pizza Hut convention in Dallas, Texas. There, Pandya suggested that they buy more franchises together in New Jersey. After spotting a prominent New Jersey franchisee, Hal McCoy, Pandya insisted that he speak with Mr. McCoy alone. When Pandya returned, he announced that McCoy would sell them nine New Jersey franchises ("The New Jersey Deal"). Pandya showed Patel the locations of each of these Pizza Huts, spread across Middlesex, Mercer, and Monmouth counties. Pandya told Patel that the acquisition

would need to be finalized through an LLC called "Edison Pizza." Under the New Jersey Deal, the two would purchase the franchises for $5,900,000, which necessitated a $1,180,000 down payment. Patel would again pay 25% in return for a 25% stake in the franchises. Patel originally believed he was to put that money into an attorney trust account, but when Patel asked for the identity of the account, Pandya replied that he had already paid Patel's share, and so Patel should pay Pandya instead. On December 16, 2011, Plaintiff wrote a check for $295,000. Patel also suggested purchasing a greater share. The parties agreed that Patel would buy a 40% stake, and Patel wrote Pandya another check for the remaining 15% (an additional $185,000). Pandya never incorporated Edison Pizza, nor did he enter into any deal with McCoy to acquire the New Jersey franchises.

From the time of the Connecticut Deal to around the time at which Plaintiffs filed this Complaint, Pandya and Krupa have consistently refused to supply Plaintiffs with financial records regarding either CT Pizza or (unincorporated) Edison Pizza. They also refused to give Plaintiffs the contact information of the attorney who managed the attorney trust fund for the New Jersey Deal. They did, however, supply Plaintiffs with doctored documents meant to represent the closing documents from the Connecticut Deal. The documents were altered to show a purchase price of $2,370,063.88, and to not include the liquor license in that price. After realizing that the New Jersey Deal never closed, Plaintiffs demanded the return of their money. Pandya refused, and threatened that a return of their money would cost Plaintiffs $400,000, plus attorney's fees. Plaintiffs still demand their money back, and Pandya still refuses.

Plaintiffs further allege that Pandya and Krupa have used a number of shell companies in similar schemes to defraud others since 2006. In addition to CT Pizza and Edison Pizza, these shell companies include JNP Foods, LLC; Ronak Foods, LLC; Rohan Properties, LLC; Shree Siddhivinayak, LLC; Haridra, LCC; and Sri Prathamesh, LLC. See Compl. at ¶ 18-22, 109. Other than CT Pizza, which was incorporated in Connecticut, and Edison Pizza, which was never incorporated, all the above-listed entities were incorporated in Pennsylvania. Plaintiffs allege that these entities are closely identified with each other and with Pandya's personal affairs, intermingling funds between them and with Pandya's personal account. The Complaint also states that these entities have common ownership, management, and operate in each other's names. See Compl. at ¶ 51, 110.

Plaintiffs also allege that, between April 2006 and September 2006, Defendants collected $610,000 from three unnamed individuals to whom he promised part ownership in a number of franchises. Similarly, Defendants allegedly

took their money without transferring any ownership to them. Defendants face these allegations in the Eastern District of Pennsylvania.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

## IV.  DISCUSSION

Defendants seek dismissal of all fraud-based claims and RICO claims. First, Defendants argue that Plaintiffs do not allege facts with enough specificity to satisfy the heightened pleading requirements of Rule 9(b). Specifically, Defendants argue that Plaintiffs accuse them of falsifying financial documents without including the false statements. Additionally, Defendants argue that the RICO claims should be dismissed because Plaintiffs failed to allege the "predicate act" and "enterprise" elements of a RICO claim. Finally, Defendants argue that Plaintiffs fail to adequately allege that the LLC Defendants are alter egos of Pandya.

## A. Plaintiffs Plead with Requisite Specificity to Satisfy Rule 9(b).

Under Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (*quoting Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)) (internal quotations omitted). "The most basic consideration in judging the sufficiency of a pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading." *Harkes v. The Accessory Corp., Inc.*, 2010 WL 919616, at *5 (D.N.J. Mar. 10, 2010). "Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (*quoting Christidis v. Pennsylvania Mortgage Trust*, 717 F.2d 96, 99-100 (3d Cir. 1983)); *see also Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir. 1998) ("Courts should . . . apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.").

Pointing only to the issue of the falsified documents, Defendants incorrectly argue that Plaintiffs failed to include the alleged false statements. On the contrary, the Complaint specifically states that Defendants altered the total purchase price on the closing documents for the Connecticut Deal from $1,400,000 to $2,370,063.88. Compl. at ¶ 98. The Complaint also alleges that Defendants altered the documents to appear as though the liquor licenses were not included in the purchase price. Compl. at ¶ 99.

## B. Plaintiffs Adequately Plead Their Federal and State RICO Claims.

"Except where inconsistent with [New Jersey Supreme Court and Appellate Division decision], New Jersey will . . . look to federal decisions interpreting RICO." *Maxim Sewerage Corp. v. Monmouth Ridings*, 273 N.J. Super. 84, 91 (Law Div. 1993) (*citing State v. Ball*, 268 N.J. Super. 72, 103 (App. Div. 1993); *State v. Passante*, 225 N.J. Super. 439, 449 (Law Div. 1987)). The Supreme Court has stated that a RICO violation arising under 18 U.S.C. § 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima*, *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The same basic elements apply to a cause of action under N.J.S.A. 2C:41-2(c), the New Jersey statute corresponding to 18 U.S.C. 1962(c).

Defendants attack the first and second element of Plaintiff's RICO claim, arguing that Plaintiffs have insufficiently pled (1) the necessary predicate acts, and (2) the existence of a RICO "enterprise." Defendants' first argument fails because Plaintiffs allege wire fraud,[1] a predicate act under 18 U.S.C. § 1961(1)(B). Defendants made many of their fraudulent representations over the telephone or email. Pandya emailed Patel his inflated profit projections for the Connecticut Deal. Compl. at ¶ 35. He then called Patel to convince him further, and to arrange a cash transaction. Compl. at ¶ 41, 42. Similarly, Pandya, called Patel to give him the terms of the fictitious New Jersey Deal and to solicit money again. Compl. at ¶ 72, 73, 74, 75. Later, Pandya and Patel emailed Plaintiffs doctored copies of the closing documents from the Connecticut Deal. Compl. at ¶ 100. The Court thus finds that Plaintiffs have given adequate factual support to establish wire fraud.

Plaintiff must demonstrate the following three sub-elements of the enterprise element: (1) an ongoing organization, formal or informal; (2) various associates that function as a continuing unit; and (3) an organizational existence separate and apart from the alleged pattern of racketeering activity. *United States v. Turkette,* 452 U.S. 576, 583 (1981). Defendants are correct that Plaintiffs must ultimately prove the *Turkette* sub-elements to show the existence of an "enterprise." However, the pleading standard is significantly less stringent, requiring only the identification of the entities that it believes are the enterprises. *See HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*, 590 F. Supp. 2d 677, 689 (D.N.J. 2008); *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 790 (3d Cir. 1984).

Plaintiffs have established the "enterprise" element of both state and federal RICO claims for the purposes of pleading. The federal RICO statute defines enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Township of Marlboro v. Scannapieco*, 545 F. Supp. 2d 452, 458 (D.N.J. 2008) (*citing* 18 U.S.C. § 1961(4)). *See also* N.J.S.A. 2C:41-1c. Additionally, a federal RICO action has a "distinctiveness" requirement. The federal "distinctiveness" requirement dictates that the complaint allege the existence of "two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Kushatner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). "'Person' includes 'any individual or entity capable of holding a legal or beneficial interest in property,'" and "'enterprise' includes 'any individual,

---

[1] Wire fraud may be based upon an interstate telephone call or email made for the purpose of executing a fraudulent scheme. *See* 18 U.S.C. § 1343; *United States v. Andrews*, 681 F.3d 509, 529 (3d Cir. 2012); *Annulli v. Panikkar*, 200 F.3d 189, 201 (3d Cir. 1999).

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact[2] although not a legal entity.'" *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 262 (3d Cir. 1995) (*quoting* 18 U.S.C. § 1961(3)-(4)). For the purposes of satisfying the "person/enterprise rule," the enterprise must be a "victim" of the RICO activity, "a passive tool used to extract money from third parties" or a "vehicle through which the unlawful pattern of racketeering activity is committed." *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 267 (3d Cir. 1995). Additionally, the Plaintiff must prove that the "person" accused of RICO directly or indirectly conducted the enterprise's affairs.

Plaintiffs plainly allege the existence of at least one "enterprise." The Complaint explains an unofficial association of Pandya, Krupa, and LLC Defendants, in which Defendants Pandya and Krupa used Defendant LLCs to continually extract money from third parties and conceal those fraudulent transactions. Plaintiff's theory identifies all Defendants known or believed to be involved in the scheme, and their respective functions. Pandya and Krupa established CT Pizza, in part, to extract money from Plaintiffs. Edison Pizza operated similarly, but Defendants never formally incorporated the enterprise (because they never purchased the New Jersey franchises). The remaining LLC Defendants posed as "management" companies or shell companies to divert money away from CT Pizza. Plaintiffs allege that the association operates to extract money from third parties in a variety of ways, and conceal their theft in a complicated corporate web. This association has been allegedly defrauding Plaintiffs since 2011, and Plaintiffs include facts to suggest that it has similarly defrauded other third parties since 2006. Plaintiffs also plainly allege that Pandya, with the help of Krupa, "directly" conducted the enterprise's affairs, and intermingled funds from the various corporations with that of his personal and family accounts.

Further, Plaintiffs have dismissed all RICO claims against LLC Defendants to cure any potential "distinctness" issue. See ECF No. 17. The Complaint sufficiently identifies the entities that make up an "enterprise," which Pandya and Krupa operate as distinct "persons." Thus, Plaintiffs sufficiently plead their RICO claims.

---

[2] Associations-in-fact can take a variety of forms, so long as they function as a continuing unit and exist long enough to pursue a course of illicit conduct. *Boyle v. United States,* 556 U.S. 938, 948 (2009).

### C. Plaintiffs Have Adequately Pled Their Alter Ego Theory of Liability.

Piercing the corporate veil, also known as "alter ego liability," is generally appropriate where one corporation so dominated another corporation that it had no separate existence and was merely a conduit of another corporation, and the dominant corporation used the controlled company to perpetuate a fraud or injustice. *Port Drivers Federation 18, Inc. v. All Saints Exp., Inc.*, 757 F. Supp. 2d 443 (D.N.J. 2010); *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002).

The weight of authority mandates that courts apply the veil-piercing law of the state of incorporation. *See DR Horton Inc.-New Jersey v. Dynastar Development, L.L.C.*, 2005 WL 1939778, at *20 (N.J. Super. Ct. Aug. 10, 2005) (*citing Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996)). The legal standard for alter ego liability in Connecticut and Pennsylvania is essentially the same. Additionally, Connecticut and Pennsylvania courts have found that the veil of an LLC may be pierced to the same degree as that of a corporation. *See, e.g., KLM Industries, Inc., v. Tylutki*, 75 Conn. App. 27 (2002); and *Advanced Tel. Sys. v. Com–Net Prof'l Mobile Radio, LLC,* 846 A.2d 1264, 1281, n. 11 (Pa. Super. Ct. 2004). *See also Partners Coffee Co., LLC v. Oceana Services and Products Co.,* 700 F. Supp. 2d 720 (W.D. Pa. 2010).

Under both Pennsylvania and Connecticut law, the court may pierce the corporate veil when a corporation is a mere instrumentality or agent of another corporation. *See, e.g., Davenport v. Quinn,* 53 Conn. App. 282 (1999) (internal quotations omitted); *Botwinick v. Credit Exch., Inc.*, 419 Pa. 65, 72 (1965). Connecticut law requires a plaintiff seeking alter ego liability to prove: (1) that the dominant shareholder had complete control over finances, stock, and policy in respect to the transaction so that the corporate entity lacks a separate mind, will, or existence of its own; (2) that the control is used to commit a fraud or wrong; and (3) that the control and breach of duty proximately cause the injury or unjust loss. *See, e.g., Hersey v. Lonrho, Inc.*, 73 Conn. App. 78 (2002). Connecticut courts also consider factors such as the intermingling of funds, the absence of corporate records and other corporate formalities, and undercapitalization. *See KLM Industries, Inc.,* 75 Conn. App. 27, 34 (2002). Pennsylvania law considers a list of relevant factors in determining whether one corporation is organized and operated as to make it a mere instrumentality of another corporation, which includes: (1) the failure to observe corporate formalities; (2) non-payment of dividends; (3) insolvency of debtor corporation; (4) siphoning the funds from corporation by dominant shareholders; (5) non-functioning of other officers or directors; (6) absence of

corporate records; (7) whether the corporation is merely a façade for the operations of the dominant shareholder or shareholders; and (8) gross undercapitalization. *Plastipak Packaging, Inc. v. Depasquale*, 75 F. App'x 86, 88 (3d Cir. 2003).

The Complaint adequately puts Defendants on notice of the factual claims Plaintiff intends to prove that would justify piercing of the corporate veil and holding the LLC Defendants liable as alter egos of Pandya and Krupa. The Complaint alleges that Pandya owns and controls CT Pizza and the Pennsylvania corporations, all from the same Feasterville-Trevose, Pennsylvania office. See Compl. at ¶ 6-13, 51, 110. Krupa acts as Pandya's "office manager" and "second-in-command" at "many," if not all, of his businesses. See Compl. at ¶ 38, 125. Pandya allegedly took money from Plaintiffs for the purchase of the Connecticut franchises and the liquor licenses and held that money in personal accounts. See Compl. at ¶ 42-48, 54-60. The Complaint further alleges that Pandya and Krupa used their control to defraud Plaintiffs per those transactions and others; gave Plaintiffs nothing in return despite their agreement of joint ownership; demanded more money under false pretenses; and used the other LLC Defendants to siphon money away from CT Pizza. Notably, Defendants diverted money away from CT Pizza in an effort to maintain the façade that Plaintiffs were partial owners of CT Pizza without paying Plaintiffs the portions of the real profits to which partial owners would be entitled. See Compl. at ¶ 48, 51, 54-60, 90-99, 112. Further, Defendants allegedly used this control over Defendant Corporations to conceal their fraud from Plaintiffs by denying them access to corporate records and original closing papers. See Compl. at ¶ 38-40, 94-99. This conduct directly resulted in a loss of almost $485,000 under the Connecticut Deal and almost $1,000,000 in total.

Additionally, Pandya's and Krupa's alleged refusals to show Plaintiffs financial records, for companies of which Plaintiffs supposedly own 25%, speak to a failure to observe corporate formalities, and possibly an absence of those records. The Complaint also alleges comingling of CT Pizza's funds with other companies owned by Pandya, as well as his personal accounts. See Comp. at ¶ 48, 51, 112. Finally, Plaintiffs have not received any payment for CT Pizza's profits since December 2011, which at least implicates Defendants' "non-payment of dividends." In sum, Plaintiffs give as much detail as possible, and the Court finds that their factual allegations suffice to plead their theory of alter ego liability.

## V.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **DENIED**. An appropriate order follows.

/s/ William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

**DATE: July 27, 2015**