## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAGDISH PATEL and KISHAN PATEL, | : | |
| | : | CIVIL ACTION NO.: |
| Plaintiffs, | : | 14-cv-08127 (WJM)(MF) |
| | : | |
| v. | : | |
| | : | |
| JIGNESH PANDYA, KRUPA PATEL, JNP | : | |
| FOODS, LLC, RONAK FOODS, LLC, | : | |
| ROHAN PROPERTIES, LLC, SHREE | : | **ANSWER WITH AFFIRMATIVE** |
| SIDDHIVINAYAK, LLC, HARIDRA, LLC, | : | **DEFENSES AND COUNTERCLAIM** |
| SRI PRATHAMESH, LLC, CT PIZZA, LLC, | : | |
| EDISON PIZZA, LLC, JOHN/JANE DOES | : | |
| 1-10, and XYZ COMPANIES 1-10 | : | |
| | : | |
| Defendants | : | |

Defendants, Jignesh Pandya ("Pandya"), Krupa Patel, JNP Foods, LLC, Ronak Foods, LLC, Rohan Properties, LLC, Shree Siddhivinayak, LLC, Haridra, LLC, Sri Prathamesh, LLC, CT Pizza, LLC, and Edison Pizza, LLC (collectively, "Defendants"), by and through their attorneys, Baratta, Russell & Baratta, P.C., file the following Answer to Plaintiffs', Jagdish Patel ("Jagdish") and Kishan Patel ("Kishan") (collectively "Plaintiffs"), Complaint with Affirmative Defenses and in support thereof states as follows:

### INTRODUCTION

1.      Denied.  It is denied that any wrongful acts have been carried out by the Defendants.

### PARTIES

1.      Admitted.  Admitted upon information and belief.

2.      Admitted.  Admitted upon information and belief.

3.      Admitted.

4.      Admitted

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted in part, denied in part.  It is admitted that Edison Pizza is not an incorporated entity.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

14.     Denied.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14.

## JURISDICTION AND VENUE

15.     Denied.  Denied as a conclusions of law to which no response is required.

16.     Denied.  Denied as a conclusion of law to which no response is required.

17.     Denied. Denied as a conclusion of law to which no response is required.

## FACTS

18.     Denied.  It is denied that Pandya has an extensive history of defrauding individuals.  Strict proof thereof is demanded at trial.

19.     Denied.  It is denied that Pandya fraudulently obtained six hundred ten thousand dollars ($610,000.00) collectively from three different individuals.  Strict proof thereof is demanded at trial.

20.     Denied.  It is denied that Pandya obtained funds by falsely promising investors a share in the ownership of certain franchises.  Strict proof thereof is demanded at trial.

21.     Denied.  It is denied that Pandya used the investors' money to purchase certain franchises and failed to transfer any ownership stake in the purchased franchises to the investors. Strict proof thereof is demanded at trial.

22.     Denied.  Plaintiffs' characterization of the lawsuit is denied as the document "speaks for itself."

23.     Admitted.   Admitted upon information and belief.

24.     Denied.  It is denied that Pandya sought to impress Jagdish with tales of his financial accomplishments.  Strict proof thereof is demanded at trial.

25.     Denied.  After reasonable investigation, Defendants are without sufficient information to either admit or deny the allegations of Paragraph 25.  As such, these allegations in Paragraph 25 are denied and strict proof thereof is demanded at trial.

26.     Denied.  It is denied that Pandya befriended Jagdish upon discovering that the Patel family had money to invest.

27.     Denied.  It is denied that Pandya sought out Jagdish to invest large sums of money in joint ventures. Pandya was originally approached by Jagdish; Pandya was not seeking partners

28.     Admitted in part, denied in part.  It is admitted that Jagdish visited Pandya's office.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

29.     Admitted in part, denied in part.  It is admitted that Pandya explained to Jagdish that he did not need partners for his businesses.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

30.     Denied.  It is denied that any statements were made to make Jagdish believe that Pandya was looking out for the Patel family so that Pandya could defraud Plaintiffs. Strict proof thereof is demanded at trial.

31.     Admitted.

32.    Admitted in part, denied in part.  It is admitted that for the Connecticut Deal, Pandya would be seventy-five percent (75%) owner and Plaintiffs would be twenty-five percent (25%) owner.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

33.    Denied.  It is denied that Pandya was responsible for funding one million fifty thousand dollars ($1,050,000.00) of the purchase price and Plaintiffs were responsible for the remaining three hundred fifty thousand dollars ($350,000.00).  Strict proof thereof is demanded at trial.

34.    Denied.  It is denied that Pandya represented that the Connecticut franchises had a history of achieving lucrative profits in order to entice Plaintiffs to accept his offer.  Strict proof thereof is demanded at trial.

35.    Admitted in part, denied in part.  It is admitted that on July 1, 2011, Pandya emailed Jagdish profit projections for the Connecticut Franchises.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

36.    Denied.  Plaintiffs' characterization of the profit projections is denied as the document "speaks for itself."

37.    Denied.  It is denied that Plaintiffs were not provided any financial information regarding the Connecticut Franchises.  Plaintiffs were provided with their requests in a timely manner.  Strict proof thereof is demanded at trial.

38.    Admitted in part, denied in part.  It is admitted that Pandya requests his employee, Krupa Patel, to provide certain information.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

39.    Denied.  It is denied that Krupa Patel would inform Plaintiffs that they need to speak to Pandya.  Strict proof thereof is demanded at trial.

40.     Denied.  It is denied that Pandya and/or Krupa used evasion tactics to prevent Plaintiffs from obtaining critical information regarding the companies.  Strict proof thereof is demanded at trial.

41.     Denied.  It is denied that Pandya informed Jagdish that the projected profits would increase if Plaintiffs paid their portion in cash instead of securing financing.  Strict proof thereof is demanded at trial.

42.     Denied.  It is denied that Pandya explained that if Plaintiffs paid their portion in cash, they would not be assessed any charges relating to the financing of Pandya's portion of the purchase price. Strict proof thereof is demanded at trial.

43.     Admitted in part, denied in part.  It is admitted that Plaintiffs paid their portion in cash. The remainder of the averment is denied and strict proof thereof is demanded at trial.

44.     Admitted.

45.     Denied.  It is denied that Pandya told Plaintiffs he need their payment in cash immediately in order to close the Connecticut Deal.  Strict proof thereof is demanded at trial.

46.     Admitted in part, denied in part.  It is admitted that Plaintiffs wrote a check to Pandya.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

47.     Denied.  It is denied that Plaintiffs' contribution of three hundred fifty thousand dollars ($350,000.00) was not used to fund the purchase of the Connecticut Deal.  Strict proof thereof is demanded at trial.

48.     Denied.  Plaintiffs' characterization of the documents in the Connecticut Deal is denied as the document "speaks for itself."

49.     Denied.  It is denied that Pandya refused to provide Plaintiffs with the closing documents from the purchase of the Connecticut Deal. Strict proof thereof is demanded at trial.

50.     Denied.  It is denied that Pandya used means to deceive Plaintiffs into giving him their money. Strict proof thereof is demanded at trial.

51.     Admitted in part, denied in part.  It is admitted that CT Pizza retained a company owned by Pandya to serve as the management company.  However, the management fee went to pay the salaries of people who were managing CT Pizza and the nine Pizza Huts.  The remainder of the averment is denied, including the amount of the management fee, and strict proof thereof is demanded at trial.

52.     Denied.  It is denied that Pandya requested additional financial contributions for the purchase of a liquor license.  Strict proof thereof is demanded at trial.

53.     Admitted.

54.     Denied.  It is denied that Pandya ever claimed that the liquor license was not included in the original purchase price.  Strict proof thereof is demanded at trial.

55.     Denied.  It is denied that Pandya stated that he had personally purchased the applicable licenses for five hundred thousand dollars ($500,000.00) and spent forty thousand dollars ($40,000.00) on attorneys fees.  Strict proof thereof is demanded at trial.

56.     Denied.  It is denied that Pandya told Plaintiffs that they were responsible for reimbursing him for twenty-five percent (25%) of the above amount. Strict proof thereof is demanded at trial.

57.     Denied.   It is denied that Pandya did not provide any proof that he purchased the subject liquor licenses.  Strict proof thereof is demanded at trial.

58.     Denied.  It is denied that Pandya was using the liquor licenses to defraud Plaintiffs out of an additional one hundred thirty-five thousand dollars ($135,000.00).  Strict proof thereof is demanded at trial.

59.     Admitted in part, denied in part.  It is admitted that Plaintiffs paid a total of four hundred eighty-five thousand dollars ($485,000.00) for a twenty-five percent (25%) share of CT Pizza.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

60.     Admitted.   Admitted upon information and belief.

61.     Denied.  It is denied that Pandya mislead Plaintiffs into believing that in late 2011, that the Connecticut Franchises were a lucrative investment.  Strict proof thereof is demanded at trial.

62.     Admitted.

63.     Denied.  It is denied that during the convention, Pandya pitched the idea of another joint venture.  Strict proof thereof is demanded at trial.

64.     Denied.  It is denied that at the convention, Pandya suggested that since Plaintiffs lived in New Jersey, they could manage the franchises and take a more active role.  Strict proof thereof is demanded at trial.

65.     Denied.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65.

66.     Admitted.   Admitted upon information and belief.

67.     Admitted in part, denied in part.  It is admitted that Pandya spoke with Hal McCoy at the convention.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

68.     Admitted in part, denied in part.  It is admitted that Pandya spoke with Hal McCoy alone at the convention.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

69.     Admitted in part, denied in part.  It is admitted that Pandya spoke with Hal McCoy alone at the convention.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

70.     Denied.  It is denied that Pandya informed Jagdish that McCoy had agreed to sell them nine (9) Pizza Huts in New Jersey and development rights for additional locations in Monmouth, Middlesex, and Mercer counties.  Strict proof thereof is demanded at trial.

71.    Denied.  It is denied that Pandya represented that they had an agreement in principle.  Strict proof thereof is demanded at trial.

72.    Denied.  It is denied that Pandya called Jagdish and informed him that the purchase price for the New Jersey Deal would be five million nine hundred thousand dollars ($5,900,000.00).  Strict proof thereof is demanded at trial.

73.    Denied.  It is denied that Pandya represented that Pandya and Plaintiffs would be required to make a down payment in the amount of one hundred eighty thousand dollars ($1,180,000.00).  Strict proof thereof is demanded at trial.

74.    Admitted in part, denied in part.  It is admitted that Pandya was performing due diligence with this possible transfer, including determining the exact locations of the New Jersey Franchises and the annual sales volume.  These would have been passed along to Plaintiffs.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

75.    Denied.  It is denied that Plaintiffs needed to pay two hundred ninety-five thousand dollars ($295,000.00) for a down payment for the New Jersey Deal.  Strict proof thereof is demanded at trial.

76.    Admitted in part, denied in part.  It is admitted that Plaintiffs agreed to partner with Pandya on the New Jersey Deal if it came to fruition.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

77.    Admitted in part, denied in part.  It is admitted that Jagdish sent an email asking Pandya to identify the attorney trust account in which to deposit the two hundred ninety-five thousand dollars ($295,000.00).   The remainder of the averment is denied and strict proof thereof is demanded at trial.

78.    Denied.  Plaintiffs' characterization of the email is denied as the document "speaks for itself."

79.     Admitted in part, denied in part.  It is admitted that Jagdish gave Pandya a check in the amount of two hundred ninety-five thousand dollars ($295,000.00).   The remainder of the averment is denied and strict proof thereof is demanded at trial.

80.     Admitted.

81.     Admitted.

82.     Admitted in part, denied in part.  It is admitted that Jagdish gave Pandya an additional one hundred eighty-five thousand dollars ($185,000.00).   The remainder of the averment is denied and strict proof thereof is demanded at trial.

83.     Admitted in part, denied in part.  It is admitted that Jagdish gave Pandya an additional one hundred eighty-five thousand dollars ($185,000.00).   The remainder of the averment is denied and strict proof thereof is demanded at trial.

84.     Denied.  It is denied that Pandya has no intention of closing on the New Jersey Deal or that Pandya sought to use Plaintiffs' money for his own personal gain.  Strict proof thereof is demanded at trial.

85.     Admitted in part, denied in part.  It is admitted that Edison Pizza was never incorporated.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

86.     Admitted in part, denied in part.  It is admitted that the deal with Hal McCoy fell through.   The remainder of the averment is denied and strict proof thereof is demanded at trial.

87.     Admitted in part, denied in part.  It is admitted that funds were not deposited with Robert Nathan, Esq.  Funds however, were allocated, set aside or "escrowed," by Pandya per Pandya and Plaintiffs agreement.   The remainder of the averment is denied and strict proof thereof is demanded at trial.

88.     Denied.  It is denied that Pandya deliberately misrepresented the above noted facts regarding the New Jersey Deal in order to induce Plaintiffs to give him money.  Strict proof thereof is demanded at trial.

89.     Denied.  It is denied that Pandya concealed the fact that the Connecticut Franchises were losing money.  Strict proof thereof is demanded at trial.

90.     Admitted in part, denied in part.  It is admitted that Pandya gave Plaintiffs a check totaling approximately thirty-four thousand dollars ($34,000.00) for profits from 2011.   The remainder of the averment is denied and strict proof thereof is demanded at trial.

91.     Denied.  The figure was not incorrect.  Strict proof thereof is demanded at trial. Pandya did not even take his share of the profits.  His share was reinvested in CT Pizza.

92.     Admitted.

93.     Admitted in part, denied in part.  It is admitted that Pandya blamed some of the poor performance on a fire, Hurricane Sandy, and the opening of two new stores.   The remainder of the averment is denied and strict proof thereof is demanded at trial.

94.     Admitted in part, denied in part.  It is admitted that once CT Pizza began requesting capital contributions to assist with cash flow and keep CT Pizza solvent, Plaintiffs demanded to review all financial records.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

95.     Denied.  It is denied that Pandya ever withheld critical information from Plaintiffs in order to conceal a fraud.  Strict proof thereof is demanded at trial.

96.     Denied.  It is denied that any closing documents were altered in any way.  Strict proof thereof is demanded at trial.

97.     Denied.  It is denied that any closing documents were altered in any way.  Strict proof thereof is demanded at trial.

98.     Denied.  It is denied that any closing documents were altered in any way.  Strict proof thereof is demanded at trial.

99.     Denied.  It is denied that any closing documents were altered in any way.  Strict proof thereof is demanded at trial.

100.    Denied.  It is denied that any closing documents were altered in any way.  Strict proof thereof is demanded at trial.

101.    Admitted in part, denied in part.  It is admitted that Plaintiffs requested copies of all CT Pizza records.   The remainder of the averment is denied and strict proof thereof is demanded at trial.

102.    Denied.  It is denied that Pandya and Krupa Patel have refused to provide CT Pizza's records.  Strict proof thereof is demanded at trial.

103.    Admitted in part, denied in part.  It is admitted that Plaintiffs demanded the return of their money.   The remainder of the averment is denied and strict proof thereof is demanded at trial.

104.    Admitted.  After the original transfer, CT Pizza made numerous capital calls.  Plaintiffs transferred four hundred eighty thousand dollars ($480,000.00) to Pandya to either use for a new venture in New Jersey or CT Pizza.  Pandya used the funds for CT Pizza.

105.    Denied.  It is denied that Pandya withheld Robert Nathan, Esq.'s contact information to conceal a fraud. Strict proof thereof is demanded at trial.

106.    Denied.  It is denied that Pandya threatened that there would be a loss of four hundred thousand dollars ($400,000.00) plus attorneys' fees. Strict proof thereof is demanded at trial.

107.    Denied.  Pandya did not make false statements to Plaintiffs to discourage them from requesting a return of their money.  Strict proof thereof is demanded at trial.

108.    Admitted.  Plaintiffs have repeatedly demanded a return of their money.
However, after the original transfer, CT Pizza made numerous capital calls.  Plaintiffs transferred
four hundred eighty thousand dollars ($480,000.00) to Pandya to either use for a new venture in
New Jersey or CT Pizza.  Pandya used the funds for CT Pizza.  Pandya complied with their
agreement and does not need to return the money.

109.    Denied.  It is denied that the following businesses are alter egos of Pandya: JNP
Foods, LLC, Ronak Foods, LLC, Rohan Properties, LLC, Shree Siddhivinayak, LLC, Haridra,
LLC, Sri Prathamesh, LLC, CT Pizza, LLC, Edison Pizza, LLC, and XYZ Companies (the
"Alter Ego Business Entities").  Strict proof thereof is demanded at trial.

110.    Denied.  It is denied that Pandya exercised control over the Alter Ego Business
Entities in furtherance of the above-noted frauds.  Strict proof thereof is demanded at trial.

111.    Denied.  It is denied that the Alter Ego Business Entities are closely identified
with the affairs of one another as well as Pandya's personal and family affairs.   Strict proof
thereof is demanded at trial.

112.    Denied.  It is denied that the Alter Ego Business Entities intermingle funds
between one another and Pandya's personal accounts.  Strict proof thereof is demanded at trial.

113.    Admitted in part, denied in part.  It is admitted that the Alter Ego Business
Entities have common owners and common management.   The remainder of the averment is
denied and strict proof thereof is demanded at trial.

## FIRST CLAIM FOR RELIEF
### (FRAUD)

114.    Denied.  This is an incorporating paragraph to which no response is required.

115.    Denied.  Denied as a conclusion of law to which no response is required.

116.    Denied.  It is denied that Pandya made false material misrepresentations to
Plaintiffs.  Strict proof thereof is demanded at trial.

117.   Denied.  It is denied that Pandya made misrepresentations with the intent that Plaintiffs would rely upon them to their detriment.  Strict proof thereof is demanded at trial.

118.   Denied.  It is denied that Pandya made misrepresentations with the intent to deceive Plaintiffs.  Strict proof thereof is demanded at trial.

119.   Denied.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 119.

120.   Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

## SECOND CLAIM FOR RELIEF
### (FEDERAL RICO, 18 U.S.C. § 1961, *et seq.*)

121.   Denied.  This is an incorporating paragraph to which no response is required.

122.   Denied.  Denied as a conclusion of law to which no response is required.

123.   Denied.  Denied as a conclusion of law to which no response is required.

124.   Denied.  It is denied that from July 2011 to present, Defendants associated together for a common purpose and were an ongoing organization.  Strict proof thereof is demanded at trial.

125.   Denied.  Denied as a conclusion of law to which no response is required.

126.   Denied.  It is denied that Pandya and Krupa Patel directed the other Defendants and non-parties to take actions in furtherance of the fraudulent purpose of the Enterprise.  Strict proof thereof is demanded at trial.

127.   Denied.  Denied as a conclusion of law to which no response is required.

128.   Denied.  It is denied that Pandya supervised and controlled the Enterprise and caused communications to be transmitted by wire and mail.  Strict proof thereof is demanded at trial.

129.    Denied.  It is denied that Pandya used the mails in furtherance of the fraudulent purpose of the Enterprise.  Strict proof thereof is demanded at trial.   Denied also as a conclusion of law to which no response is required.

130.    Denied.  It is denied that Pandya  transmitted communications by wire in furtherance of the fraudulent purpose of the Enterprise.  Strict proof thereof is demanded at trial. Denied also as a conclusion of law to which no response is required.

131.    Denied.  Denied as a conclusion of law to which no response is required.

132.    Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

### THIRD CLAIM FOR RELIEF
**(NEW JERSEY RICO, N.J.S.A. 2C:41-1, *et seq*.)**

133.    Denied.  This is an incorporating paragraph to which no response is required.

134.    Denied.  Denied as a conclusion of law to which no response is required.

135.    Denied.  Denied as a conclusion of law to which no response is required.

136.    Denied.  It is denied that from July 2011 to present, Defendants associated together for a common purpose and were an ongoing organization.  Strict proof thereof is demanded at trial.

137.    Denied.  Denied as a conclusion of law to which no response is required.

138.    Denied.  It is denied that Pandya and Krupa Patel directed the other Defendants and non-parties to take actions in furtherance of the fraudulent purpose of the Enterprise.  Strict proof thereof is demanded at trial.

139.    Denied.  Denied as a conclusion of law to which no response is required.

140.    Denied.  It is denied that Pandya supervised and controlled the Enterprise and caused communications to be transmitted by wire and mail.  Strict proof thereof is demanded at trial.

141.    Denied.  Denied as a conclusion of law to which no response is required.

142.    Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

## FOURTH CLAIM FOR RELIEF
### (FRAUDULENT INDUCEMENT)

143.    Denied.  This is an incorporating paragraph to which no response is required.

144.    Denied.  It is denied that Pandya made false material misrepresentations to Plaintiffs.  Strict proof thereof is demanded at trial.   Denied also as a conclusion of law to which no response is required.

145.    Denied.  It is denied that Pandya made misrepresentations with the intent that they would be relied upon by Plaintiffs and induce Plaintiffs to enter into agreements with Pandya. Strict proof thereof is demanded at trial.   Denied also as a conclusion of law to which no response is required.

146.    Denied.  Denied as a conclusion of law to which no response is required.

147.    Denied.  Denied as a conclusion of law to which no response is required.

148.    Denied.  It is denied that Pandya knew that Plaintiffs were under a misapprehension as to the terms of the Pandya-Patel Agreements at the time Plaintiffs entered into the agreements.  Strict proof thereof is demanded at trial.   Denied also as a conclusion of law to which no response is required.

149.    Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

## FIFTH CLAIM FOR RELIEF
### (NEGLIGENT MISREPRESENTATION CAUSING HARM)

150.    Denied.  This is an incorporating paragraph to which no response is required.

151.    Denied.  Denied as a conclusion of law to which no response is required.

152.   Denied.  It is denied that Pandya made misrepresentations with the intent that they would be relied upon by Plaintiffs and induce Plaintiffs to enter into agreements with Pandya. Strict proof thereof is demanded at trial.   Denied also as a conclusion of law to which no response is required.

153.   Denied.  Denied as a conclusion of law to which no response is required.

154.   Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

## SIXTH CLAIM FOR RELIEF
### (CONVERSION)

155.   Denied.  This is an incorporating paragraph to which no response is required.

156.   Denied.  Denied as a conclusion of law to which no response is required.

157.   Admitted in part, denied in part.  It is admitted that Pandya has refused to return Plaintiffs money.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

158.   Denied.  Denied as a conclusion of law to which no response is required.

159.   Denied.  Denied as a conclusion of law to which no response is required.

160.   Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

## SEVENTH CLAIM FOR RELIEF
### (BREACH OF CONTRACT – CT PIZZA AGREEMENT)

161.   Denied.  This is an incorporating paragraph to which no response is required.

162.   Denied.  It is denied that Plaintiffs and Pandya entered in a contract whereby Plaintiffs were to pay Pandya three hundred fifty thousand dollars ($350,000.00) in exchange for twenty-five percent (25%) of CT Pizza.  Strict proof thereof is demanded at trial.   Denied also as a conclusion of law to which no response is required.

163.    Admitted in part, denied in part.  It is admitted that the three hundred fifty thousand dollars ($350,000.00) went towards the purchase price.  The remainder of the averment is denied and strict proof thereof is demanded at trial.

164.    Denied.  Denied as a conclusion of law to which no response is required.

165.    Denied.  Denied as a conclusion of law to which no response is required.

166.    Denied.  Denied as a conclusion of law to which no response is required.

167.    Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

## EIGHTH CLAIM FOR RELIEF
### (BREACH OF CONTRACT – LIQUOR LICENSE AGREEMENT)

168.    Denied.  This is an incorporating paragraph to which no response is required.

169.    Denied.  It is denied that Plaintiffs and Pandya entered into a second agreement whereby Pandya would purchase liquor licenses.  Strict proof thereof is demanded at trial.

170.    Denied.  It is denied that Plaintiffs agreed to pay twenty-five percent (25%) of the purchase price of the liquor license.  Strict proof thereof is demanded at trial.

171.    Denied.  Denied as a conclusion of law to which no response is required.

172.    Denied.  Denied as a conclusion of law to which no response is required.

173.    Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

## NINTH CLAIM FOR RELIEF
### (BREACH OF CONTRACT – EDISON PIZZA AGREEMENT)

174.    Denied.  This is an incorporating paragraph to which no response is required.

175.    Denied.  It is denied that Plaintiffs and Pandya entered into a third agreement whereby Pandya would pay Pandya four hundred eighty thousand dollars ($480,000.00) in exchange for forty percent (40%) stake in Edison Pizza.  Strict proof thereof is demanded at trial.

176.   Denied.  It is denied that Plaintiffs agreed to pay twenty-five percent (25%) of the purchase price of the liquor license.  After the original transfer, CT Pizza made numerous capital calls.  Plaintiffs transferred four hundred eighty thousand dollars ($480,000.00) to Pandya to either use for a new venture in New Jersey or CT Pizza.  Pandya used the funds for CT Pizza.  Strict proof thereof is demanded at trial.

177.   Denied.  Denied as a conclusion of law to which no response is required.

178.   Denied.  Denied as a conclusion of law to which no response is required.

179.   Denied.  Denied as a conclusion of law to which no response is required.

180.   Denied.  Denied as a conclusion of law to which no response is required.

181.   Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

### TENTH CLAIM FOR RELIEF
### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

182.   Denied.  This is an incorporating paragraph to which no response is required.

183.   Denied also as a conclusion of law to which no response is required.

184.   Denied.  Denied as a conclusion of law to which no response is required.

185.   Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

### ELEVENTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

186.   Denied.  This is an incorporating paragraph to which no response is required.

187.   Denied also as a conclusion of law to which no response is required.

188.   Denied.  Denied as a conclusion of law to which no response is required.

WHEREFORE, the Defendants request judgment in their favor and against the Plaintiffs.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Defendants are not guilty of any of the acts or omissions alleged in the Complaint or otherwise.

### SECOND AFFIRMATIVE DEFENSE

Defendants performed and/or discharged each and every duty which they owed to Plaintiffs, if any, under the circumstances alleged in the Complaint or under any other circumstances.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the Doctrine of Waiver.

### FOURTH AFFIRMATICE DEFENSE

Plaintiffs' claims are barred by the Statute of Frauds.

### FIFTH AFFIRMATICE DEFENSE

Plaintiffs' claims are barred in accord and satisfaction.

### SIXTH AFFIRMATICE DEFENSE

Plaintiffs' claims are barred by the Doctrine of Illegaility.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the Doctrine of Laches.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the Doctrine of Statute of Limitations.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the Doctrine of Estoppel.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the Doctrine of Release.

### ELEVENTH AFFIRMATIVE DEFENSE

The liability of Defendants, if any, is reduced by monies paid to Plaintiffs by collateral sources.

### TWELFTH AFFIRMATIVE DEFENSE

The obligation of Defendants, if any, are defined and limited by contract.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred or recovery reduced due to Plaintiffs' failure to mitigate damages.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by one or more superseding causes.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' losses and damages resulted from circumstances and conditions beyond the control of Defendants.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs lack standing to bring their alleged claims for relief.

### DEMAND FOR STATEMENT OF DAMAGES PURSUANT TO R.4:5-2

Defendants demand that Plaintiffs furnish a Statement of Damages Claimed within the time prescribed by the Rules of Court.

### REQUEST FOR DOCUMENTS PURSUANT TO R.4:18-2

Defendants demand that Plaintiffs produce all documents referred to in the Complaint within five days of the service of this Request for Documents.

## DEMAND FOR STATEMENTS PURSUANT TO <u>R</u>.4:10-2(c)

Defendants demand that Plaintiffs produce any statement made by any servant, agent, employee or representative of defendant concerning this action or the subject matter of this action.

## DESIGNATION OF TRIAL COUNSEL PURSUANT TO <u>R</u>.4:25-4

Defendants have designated Kenneth C. Russell, Esquire as trial counsel in the above-captioned matter.

## CERTIFICATION PURSUANT TO <u>R</u>.4:5-1

I hereby certify that, to my knowledge, the matter and controversy is not the subject of any action pending in any court and/or arbitration proceeding and that no other action or arbitration proceeding is presently contemplated.

## <u>COUNTERCLAIM</u>

Counterclaim-Plaintiffs, Jignesh Pandya and CT Pizza, LLC ("CT Pizza") (collectively "Counterclaim Plaintiff"), by and through his attorneys, Baratta, Russell & Baratta, hereby submits the following Complaint against the Counterclaim-Defendants, Jagdish Patel ("Jagdish") and Kishan Patel ("Kishan") (collectively "Counterclaim Defendants"), and, in support thereof, avers as follows:

## <u>PARTIES</u>

1.      Counterclaim-Plaintiff, Jignesh Pandya, is an adult individual and a resident of Pennsylvania, residing at 8 Woodland Road, Newtown, Pennsylvania, 18940.

2.      Counterclaim-Plaintiff, CT Pizza is a Connecticut PA limited liability company.

3.      Defendant, Jagdish, is an adult individual and a resident of New Jersey, residing at 395 New Dover Road, Colonia, New Jersey 07067.

4.      Defendant, Kishan, is an adult individual and a resident of New Jersey, residing at 395 New Dover Road, Colonia, New Jersey 07067.

**JURISDICTION AND VENUE**

5.      Jurisdiction is founded upon diversity of citizenship of the parties and the amount in controversy pursuant to 28 U.S.C. §1322, in that Counterclaim-Plaintiff is a citizen and resident of the Commonwealth of Pennsylvania and Counterclaim-Defendants are located in the State of New Jersey  and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in the District of New Jersey.

7.      This Court is authorized to grant Declaratory Relief under the Declaratory Judgment Act, 28 USC Section 2201-02, implemented through Federal Rule 57 of the Federal Rules of Procedure.

**FACTUAL BACKGROUND**

**A.      CT PIZZA, LLC**

8.      In early 2011, Counterclaim-Plaintiff began pursuing a business opportunity.

9.      When Counterclaim-Plaintiff began negotiating for the purchase of nine (9) individual Pizza Hut franchises, located in Connecticut, and development rights for an additional twenty (20) locations (the "Connecticut Deal"), neither Kishan nor his father, Jagdish, were involved with negotiations.

10.     Counterclaim-Plaintiff incorporated CT Pizza which would own the Pizza Hut franchise in Connecticut.

11.     Learning of Counterclaim-Plaintiff's business venture through mutual contacts, Jagdish approached Counterclaim-Plaintiff requesting that he make Kishan a partner in this new venture.

12.     At the time Counterclaim-Plaintiff was approached, he was not looking for a

partner in CT Pizza.

13.     However, Counterclaim-Plaintiff became close to Jagdish and wanted to help his friend's family.

14.     Counterclaim-Plaintiff then decided to permit Kishan as a partner in CT Pizza.

15.     Counterclaim-Plaintiff took the bulk of the responsibilities for the purchase and management of CT Pizza:

     a.   Counterclaim-Plaintiff personally guaranteed loans and the franchise agreement.

     b.   Counterclaim-Defendant did not guarantee the loans or the franchise agreement.

     c.   Counterclaim-Plaintiff utilized his own experience, as well as his employees and other companies to manage, lend expertise, and even funds to CT Pizza to continue its operations.

16.     Once Counterclaim-Plaintiff secured an interest in CT Pizza, he in-turn offered Kishan 25% in CT Pizza for approximately four hundred eight-five thousand dollars ($485,000.00).

17.     Kishan and Jagdish were not involved in the Connecticut Deal negotiations that Counterclaim-Plaintiff had to acquire CT Pizza, but they also never expressed a desire to be involved in the negotiations.

18.     Despite the fact that Kishan was a passive partner, Counterclaim-Plaintiff kept Kishan - and Jagdish, despite not being a partner – abreast of the negotiations and the information provided to them by sellers.

19.     Counterclaim-Defendants had access to numerous documents, regarding the purchase of the Pizza Huts, for their review, including, but not limited to, profit projections, profit and loss statements, leases, purchase agreements, the liquor license, a list of landlords and

their waivers, W2s, inspection reports, and a sales comparison for Q1 and Q2.

20.     Prior to finalizing the Connecticut Deal, Kishan had the ability to demand any other due diligence that he found necessary.

21.     However, Counterclaim-Defendants never took advantage of the due diligence process and/or the information derived therefrom.

22.     Counterclaim-Defendants were satisfied with Counterclaim-Plaintiff performing the negotiations and the due diligence necessary to purchase the Pizza Huts.

23.     Counterclaim-Defendants never complained during the negotiations nor did Counterclaim Defendants complain when when Kishan received distribution(s) from CT Pizza.

24.     In fact, Counterclaim-Plaintiff received numerous emails from Jagdish profusely thanking him for allowing his son, Kishan, the opportunity to be Counterclaim-Plaintiff's partner.

25.     Once the Connecticut Deal was finalized, Counterclaim-Plaintiff still kept Counterclaim-Defendants abreast of the financial health of CT Pizza and the individual Pizza Huts.

26.     Over the course of their business relationship, Counterclaim-Plaintiff provided Counterclaim-Defendants quarterly statements showing CT Pizza's profits and losses, profit and loss statements for each of the nine Pizza Huts, tax returns, and bank account statements.

27.     The financials were entirely transparent to the Counterclaim-Defendants.

28.     Any time Counterclaim-Defendants requested a document, it was provided as soon as it could be produced.

29.     As long as Kishan received his regular check, Kishan and Jagdish were not interested in actively participating in CT Pizza.

30.     After approximately one year of owning the Pizza Huts, CT Pizza encountered some financial troubles.

31. The franchise business is a risky one where profits are not always guaranteed.

32. CT Pizza's cash flow was insufficient to pay its expenses.

33. Through capital calls, additional funds were requested to assist with cash flow and keep CT Pizza solvent.

34. Counterclaim-Defendants refused to put Kishan's 25% of the capital calls into CT Pizza.

**B.    THE OPERATING AGREEMENT**

35. On July 12, 2011, Counterclaim-Plaintiff and Kishan executed CT Pizza's Amended and Restated Limited Liability Company Operating Agreement (the "Operating Agreement").  A true and correct copy of the Operating Agreement is attached as Exhibit "A".

36. The Operating Agreement, paragraph 3.2.1, provides in pertinent part:

> 3.2.1.  If the Manager at any time or from time to time determines that the Company requires additional Capital Contributions, then the Manager shall give notice to each Member of (i) the total amount of additional Capital Contribution that is required, (ii) the reason the additional Capital Contribution is required, (iii) each Member's proportionate share of the total additional Capital Contribution (determined in accordance with this Section), and (iv) the date each Member's additional Capital Contribution is due and payable.  A Member's proportionate share of the total additional Capital Contribution shall be equal to the product obtained by multiplying the Member's Percentage and the total additional Capital Contribution required.  A Member's proportionate share shall be payable in cash or by certified check.

37. At the time this Operating Agreement was executed, the percentage of CT Pizza owned by Counterclaim-Plaintiff was 75%; the percentage of CT Pizza owned by Kishan was 25%.

38. During the course of business, CT Pizza was in need of numerous cash infusions just to remain viable and not file for bankruptcy.

39.     As a result, Counterclaim-Plaintiff, as Managing Member, made numerous requests under paragraph 3.2.1 of the Operating Agreement for additional Capital Contributions from Kishan.

40.     Despite making these mandatory Capital Calls, Kishan failed to contribute to CT Pizza his required proportionate share.

41.     As a result of Kishan's failure, Counterclaim-Plaintiff made Kishan's Capital Call payments.

42.     These additional Capital Contributions allowed CT Pizza to remain open and solvent.

43.     Despite making capital calls in compliance with paragraph 3.2.1 of the Operating Agreement, since those capital calls were not met, on May 6, 2015, Counterclaim-Plaintiff's counsel sent a letter and enclosures (the "Capital Call Letter") to Counterclaim-Defendants counsel organizing all of the capital calls on one spreadsheet and again requesting Counterclaim-Defendants comply with their contractual obligations.  A true and correct copy of the Capital Call Letter is attached as Exhibit "B".

44.     Since the Capital Call Letter, Counterclaim-Plaintiff has made two additional capital calls in the amount of thirty thousand dollars ($30,000.00).

45.     To date, after initial funding, Counterclaim-Plaintiff has paid approximately two million two hundred four thousand four hundred seventy-two dollars and seven cents ($2,204,472.07) to CT Pizza.

46.     Although he has repeatedly requested Kishan's proportionate share of the additional Capital Contribution, Kishan has ignored these requests.

47.     Kishan has failed to pay his required Capital Calls, which have amounted to five hundred fifty-one thousand one hundred eighteen dollars and two cents ($551,118.02), more than his initial, and only, contribution to CT Pizza.

48.     The Operating Agreement, paragraph 3.2.3, provides in pertinent part:

> 3.2.3. If a Member fails to pay when due all or any portion of any
> Capital Contribution, the Manager shall request the non-defaulting
> Members to pay the unpaid amount of the defaulting Member's
> Capital Contribution (the "Unpaid Contribution").  To the extent
> the Unpaid Contribution is contributed by any other Member, the
> defaulting Member's Percentage shall be reduced and the
> Percentage of each Member who makes up the unpaid
> Contribution shall be increased, so that each Member's Percentage
> is equal to a fraction, the numerator of which is that Member's
> total Capital Contribution and the denominator of which is the total
> Capital Contribution of all Interest Holders.

49.     Therefore, as Managing Partner of CT Pizza, Counterclaim-Plaintiff seeks to
invoke paragraph 3.2.3 of the Operating Agreement and dilute Kishan's interest in CT Pizza.

## COUNT I
## CIVIL ACTION FOR DECLARATORY JUDGMENT

50.     Counterclaim-Plaintiff incorporates by reference all of the allegations contained
in Paragraphs 1 through 49 as if set forth fully herein.

51.     Paragraph 3.2.3 of the Operating Agreement allows the Managing Partner of CT
Pizza to dilute another partner's share if that partner fails to pay all or a portion of his or her
share of the capital contribution and another partner pays the unpaid contribution.

52.     In this matter, Kishan ignored all capital calls for CT Pizza.

53.     To keep CT Pizza solvent, Counterclaim-Plaintiff paid both his share of the
capital calls but also Kishan's outstanding payments.

54.     Counterclaim-Plaintiff believes that under paragraph 3.2.3 of the Operating
Agreement, as Managing Partner, he can now dilute and/or eliminate Kishan's share in CT Pizza.

55.     Counterclaim-Plaintiff therefore seeks a declaration by the Court that he may
dilute and/or eliminate Kishan's share in CT Pizza under paragraph 3.2.3 of the Operating
Agreement.

WHEREFORE, Counterclaim-Plaintiff, Jignesh Pandya, respectfully requests, pursuant to 28 U.S.C. § 2201(a), a Declaratory Judgment that:

1) Kishan Patel's interest in CT Pizza, LLC is diluted in accordance with the Operating Agreement, paragraph 3.2.3.

2) Kishan Patel's interest in CT Pizza, LLC is eliminated in accordance with his failure to make capital calls in accordance with paragraphs 3.2.1 and 3.2.3.

3) Such other and further relief as the Court deems just and appropriate.

**COUNT II**
**BREACH OF CONTRACT**

56.   Paragraphs 1 through 55 of the Counterclaim is incorporated herein by reference.

57.   Counterclaim-Defendants conduct as set forth above has breached his or their contract with the Counterclaim Plaintiff.

58.   Said breach of contract has cost the Counterclaim Plaintiff in excess of $2.4 million dollars.

59.   As a result of the Counterclaim-Defendants conduct in failing to make required capital contributions, the Counterclaim-Plaintiff has now lost the Development Agreement with Pizza Hut, thereby resulting in additional financial losses.

60.   Said breach of contract has potentially exposed Counterclaim-Plaintiff's personal guarantees, including but not limited to guarantees for bank loans as well as the guarantee on the franchise agreement.

61.   Said guarantees expose the Counterclaim-Plaintiff to additional damages all of which derive from the Counterclaim-Defendants breach of contract.

62.   Counterclaim-Defendants had promised that they would meet any capital requirements or capital calls.

WHEREFORE, Counterclaim-Plaintiff respectfully requests a judgment against the Counterclaim-Defendants in excess of $2,000,000.

## COUNT III
## <u>MISREPRESENTATION</u>

63.     Paragraphs 1 through 62 of the Counterclaim is incorporated herein by reference.

64.     Counterclaim-Defendants' conduct constitutes intentional and/or negligent misrepresentations.

WHEREFORE, Counterclaim-Plaintiff respectfully requests a judgment against the Counterclaim-Defendants in excess of $2,000,000.

Respectfully submitted,

BARATTA, RUSSELL & BARATTA:

BY:     /s/ Courtney D. Zeuner
        COURTNEY D. ZEUNER, ESQUIRE
        Attorneys for Defendants/Counterclaim-
        Plaintiffs

DATED: August 10, 2015

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**


| | | |
|---|---|---|
| **JAGDISH PATEL, ETAL,** | : | **CIVIL ACTION** |
| | | **NO. 2:14- cv-08127-WJM-MF** |
| **Plaintiffs** | : | |
| **v.** | | |
| **JIGNESH PANDYA, ETAL** | : | |
| **Defendants** | : | |

_____

| | |
|---|---|
| **JIGNESH PANDYA,** | : |
| **Counterclaim Plaintiff** | |
| **v.** | : |
| **JAGDISH PATEL and KISHAN PATEL** | |
| **Counterclaim Defendants** | **:** |

### CERTIFICATION OF SERVICE

I, Courtney D. Zeuner, Esquire, counsel for Counterclaim Plaintiff, certifies that a copy of

Defendants' Answer to Complaint and Counterclaim Plaintiff's Complaint for Declaratory Relief

was served by Electronic and Regular Mail on August 10,  2015 upon:


Justin A. Jacobs, Esq.
Genova Burns LLC
494 Broad Street
Newark, NJ  07102
jjacobs@genovaburns.com


_____ /s/ Courtney D. Zeuner, Esq.
**BARATTA, RUSSELL & BARATTA**
3500 Reading Way
Huntingdon Valley, PA 19006
Phone:  215-914-2222
Fax:  215-914-2118
*Courtney@barattarussell.com*