```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY

PATEL, et al.,                       .
                                     .
        Plaintiffs,                  .
                                     . Case No. 14-cv-08127
vs.                                  .
                                     . Newark, New Jersey
PANDYA, et al.,                      . September 10, 2015
                                     .
        Defendants.                  .
                                     .



                   TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE MARK FALK
              UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

 For the Plaintiffs:    JUSTIN AARON JACOBS, ESQ.
                        Genova Burns LLC
                        494 Broad Street
                        Newark, NJ 07102
                        (973) 230-2081
                        Email: Justin.a.jacobs@gmail.com

                        RAJIV D. PARIKH, ESQ.
                        Genova Burns LLC
                        494 Broad Street
                        Newark, NJ 07102
                        (973) 533-0777
                        Email: Rparikh@genovaburns.com

                        Also present: Kathleen Barnett
                        Einhorn (Genova Burns)


 For the Defendants:    KENNETH C. RUSSELL, JR., ESQ.
                        Baratta, Russell & Baratta
                        3500 Reading Way
                        Huntingdon Valley, PA 19006
                        (215) 914-2222
```

```
 1

 2
     Audio Operator:
 3
     Transcription Service:        KING TRANSCRIPTION SERVICES
 4                                  3 South Corporate Drive, Suite 203
                                    Riverdale, NJ  07457
 5                                  (973) 237-6080

 6   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1            (Commencement of proceedings at 11:22 A.M.)

 2

 3            THE COURT:  This is the case of Patel, et al.,

 4   versus Pandya, et al..  it's Docket 14-8127.

 5            May I have the appearances of counsel, please.

 6            MR. JACOBS:  Justin Jacobs, and Kathleen Barnett

 7   Einhorn of Genova Burns for plaintiffs Jagdish and Kishan

 8   Patel.

 9            MR. RUSSELL:  Ken Russell here on behalf of the

10   defendants plural, J. Pandya is accompanying me at the table,

11   and multiple entities, which are owned by Mr. Pandya were

12   sued in the matter.

13            I also represent Krupa Patel, an employee of

14   Mr. Pandya, who was also sued in the matter.

15            THE COURT:  Okay.  Well, we've had a number of

16   con- -- conferences and contacts.  And there seemed to be a

17   certain level of dissatisfaction and problems with discovery,

18   et cetera.  And indeed I had scheduled a conference at one

19   point, and I believe the defendants didn't appear, perhaps

20   through a scheduling error.  But just given the tenor of the

21   discourse the last time I spoke off the record on the

22   telephone with counsel, I thought it best to address things

23   on the record at this point.

24            So I'll ask both -- I guess I'll begin with the

25   plaintiff.  And we have a discovery end date, I believe of --

 1   in December.

 2            Is that correct?

 3            MR. JACOBS:  That's correct.

 4            THE COURT:  Is there anything that the plaintiffs

 5   feel that they have not received in terms of discovery or

 6   anything along those lines?

 7            MR. JACOBS:  Yeah, there are a few issues, one of

 8   which is we received documents in connection with defendants'

 9   Rule 26 disclosures.  But those documents were all out of

10   order, so they were Bates-stamped, but we would, for example,

11   have Bates-stamped 1302, and then the next page would be, you

12   know, 1404.  So there's no way to kind of read it in

13   Bates-stamped order.

14            We've asked a number of times whether or not we can

15   get it in Bates-stamped order.  And we just haven't received

16   it.  It's been, what, months now.

17            THE COURT:  So -- I guess I can hear from the

18   defendants on that, but it seems to me you're here for that

19   purpose.  So I can make any jury room available for you to go

20   in there and take care of that right now.

21            MR. JACOBS:  I mean -- and then -- so in addition,

22   we served defendants with a deficiency letter with respect to

23   their interrogatories and document requests.  We gave them, I

24   think, until next week to respond to that deficiency letter,

25   and then we -- if we aren't able to work out those issues, we

1    would like to raise those with the Court.

2              THE COURT:  Well, I think you should work those out

3    today also in my jury room, and then later in the afternoon,

4    I can decide any issues, if I need to, if there is simple

5    questions like that.

6              What's next?  Is there anything else?

7              MR. JACOBS:  We have an issue where we issued a

8    subpoena to Paren Dixit, who's the accountant for a few of

9    the entities that are defendants in this matter.  They were

10   told not to respond for a while.  We've resolved those

11   objections.  But that company has not responded to the

12   subpoena to date.  We've told them that we're going to bring

13   a motion, if we need to.  It's an outstanding discovery

14   issue.  But it's not -- it's not an issue necessarily with

15   respect to the defendants at this time because we've resolved

16   their objections.

17             But I wanted to at least, you know, raise it so

18   it's on the record.

19             THE COURT:  Okay.  Good.

20             Is that all the plaintiff has?

21             MR. JACOBS:  Yeah, and we were under the impression

22   that this was a settlement conference as well --

23             THE COURT:  I'm going to get to that.

24             MR. JACOBS:  Okay.

25             THE COURT:  But, you know, I have other cases and I

 1    was ready to have a settlement conference the last time.  I'm

 2    ready to have it again, and I will.  But I wanted to see if

 3    there were things that in the interim were prior to the

 4    settlement conference, so you can go and confer, and so if

 5    we -- if we don't settle the case, I can resolve your

 6    discovery disputes, that way moving the case along, which I

 7    think is in everyone's interest.  Okay?

 8              Defendant, do you have any issues?

 9              MR. RUSSELL:  Well, let me just address those, the

10    Paren Dixit matter is straightened out, so there'll be

11    production -- whether they produce or not.  If they don't,

12    it's out of our hands.

13              The renumbering of the 4,000 documents we provided

14    to them, we indicated that we would renumber them.  That's a

15    second issue.

16              We did get this week a 15-page deficiency letter

17    from the plaintiffs, which frankly, I received and we're

18    looking at.  So I -- 15 pages' worth.

19              That -- those are the three matters they had

20    raised.  We're more than willing to look at the deficiency

21    letter and respond to it next week.

22              So it sounds like the discovery issues, we will

23    renumber the 4,000 pages we provided, and that's fine.

24              With regard to our discovery, we provided them over

25    4,000 documents just on the Rule 26 disclosures.  We've

1    received very few documents back, especially just pursuant to

2    the Rule 26 disclosures.

3            In addition, we had requests for production of

4    documents.  We haven't received anything.  We haven't even

5    received the emails that we sent to them that their clients

6    sent to us.

7            So the issue -- one of the issues in this case is

8    that when we -- when the plaintiff and defendant were going

9    to purchase a string of Pizza Huts up in Connecticut, that

10   you didn't provide me enough information in order to allow me

11   to understand what the transaction was, and then, in fact,

12   you defrauded me with the information you provided us.

13           So one of the key ingredients is that we receive

14   back from them everything that they received from us.  It's

15   not good enough that we just sent them what we have.  They

16   should send us what they received so that we have that,

17   Bates-stamped from them, and we'd say here's the 3,000

18   documents that we sent you so that you can do your due

19   diligence prior going into this transaction.

20           We haven't received any of those documents.

21           And -- and we didn't even receive back things that

22   we've already sent them.

23           So those -- that's -- that's the one issue.

24           We have -- so we haven't even received any of those

25   documents yet.  And there are other documents that we're

```
 1    expecting -- there was a subpoena issued, for example, and
 2    they've received the documents pursuant to the subpoena.  Our
 3    agreement was that when they received those documents, they
 4    would pass them right along to us.
 5              Well, they've had them now for three weeks, and we
 6    haven't received any of them.
 7              I only raise these because what's happening is it
 8    is becoming a pattern.  I don't -- we're in the case.  We're
 9    litigating the case.  We give them 4,000 documents, Rule 26,
10    we're giving them everything we have, and we're being
11    document-starved.
12              THE COURT:  Okay.  I understand that that's a --
13    we'll resolve those questions today.
14              MR. JACOBS:  Yeah, and, Judge, we'd like to respond
15    to --
16              THE COURT:  Yeah, I'm -- but at first I want you to
17    go and talk about it.  See?  In other words, I want you to go
18    and talk about them, because I have a lot of other people
19    waiting --
20              MR. JACOBS:  Would you prefer that as opposed to --
21              THE COURT:  Well, I wanted to hear what the issues
22    were.
23              MR. JACOBS:  Okay.
24              THE COURT:  But I mean, when we get -- I'll get
25    down to the specifics with you.  I'll go over all the
```

1   documents.

2           MR. JACOBS:  Okay.

3           THE COURT:  I'm going to resolve your disputes

4   today.

5           MR. JACOBS:  Excellent.

6           THE COURT:  But I mean, it's not going to happen

7   immediately, so ...

8           MR. JACOBS:  Understood.

9           THE COURT:  Is there anything else you want to say

10  right now?

11          Okay.  Thank you.  Let's go off the record.

12      (Recess:  11:29 A.M. to 4:52 P.M.)

13

14          THE COURT:  This is the case of Patel, et al.,

15  versus Pandya, et al., Docket 14-8127.

16          Could you please -- I know you were here this

17  morning -- could you please put your appearances on the

18  record, once again.  And then you can be seated.

19          MR. PARIKH:  Your Honor, Raj Parikh and Justin

20  Jacobs from Genova Burns LLC.  I'll note for the record,

21  Your Honor, that I was on a plane this morning, I came right

22  from the airport, so my partner, Kathleen Einhorn was here

23  this morning, but I substituted in for her around

24  one o'clock.

25          THE COURT:  Okay.  Excellent.  Thank you.

1          MR. RUSSELL:  Your Honor, Ken Russell here on

2   behalf of J. Pandya and all of the defendants.

3          THE COURT:  All right.  Very well.

4          I mean, the parties appeared here in the morning,

5   and I think spent most of the day here.  Apparently, there

6   were some outstanding discovery disputes, perhaps some other

7   kinds of disputes, and I understand that you have reached

8   some agreement, and you want to read something into the

9   record.

10         So feel free.

11         MR. RUSSELL:  Yes, Your Honor.

12         THE COURT:  You can be seated if you want to, just

13  to -- you know, for comfort's sake.

14         MR. RUSSELL:  Yes, Your Honor, I have the initial

15  document agreement, and Raj will read in the -- the

16  agreements that we've had had on interrogatories, and then

17  we'll identify disagreements.

18         THE COURT:  Okay.

19         MR. RUSSELL:  So on Tuesday, September 17th, the

20  parties have agreed they will exchange and agree upon search

21  terms which will be utilized to conduct their ESI production.

22         All parties will produce relevant documents in

23  their possession, including but not limited to emails and

24  other electronic discovery conducted pursuant to the

25  agreed-to search terms on or before September 28th, 2015.

 1              The production shall be Bates-stamped and produced
 2    in Bates-stamped order.
 3              On or before October 5th, the parties shall
 4    identify documents needed to be produced in native format.
 5              On or before October 19th, the parties shall
 6    produce native-format documents pursuant to a mutually
 7    agreed-to process.
 8              On or before October 26th, the parties shall have
 9    agreed to and conducted an inspection of the books and
10    records of CT Pizza.  Your Honor, that primarily entails us
11    getting a date where the plaintiffs can come and inspect the
12    books and records, which we'll make available at our offices.
13    And then any and all -- well -- any and all interrogatory
14    responses shall identify the documents which are responsive
15    to that request.  But I know Raj will get into that.
16              MR. PARIKH:  Judge, we -- the plaintiffs agree with
17    all those dates.
18              The only other date I would -- I would put in,
19    Judge, is that the parties have agreed that any supplemental
20    interrogatory responses reflected by the agreements I'll read
21    in momentarily, will be provided by October 19th as well.
22              There are disagreements related to four
23    interrogatories of documents, Judge.  Do you want us to deal
24    with those now, or you want to read all the agreements first
25    and then the disagreements?

1           THE COURT:  You mean there's more agreements of

2    things?

3           MR. JACOBS:  There are agreements on

4    interrogatories, specifically with respect to what's going to

5    be done.

6           THE COURT:  Well, might as well -- if you want to

7    put them on the record that way, you can.

8           MR. JACOBS:  Yeah --

9           THE COURT:  I don't know how you -- you know,

10   normally things are formalized with an order.  Now, you can

11   have an order that refers to what you put on the record.  Or

12   you can have no order, if you don't feel an order is

13   necessary.

14          MR. RUSSELL:  Your Honor -- Your Honor, maybe an

15   agreed-to order on interrogatories would be -- we can go back

16   and forth and submit an agreed-to order.

17          THE COURT:  Or you can just have an order saying

18   for things that are -- for every -- for everything agreed on

19   the record.

20          MR. PARIKH:  That's my preference, Judge.

21          THE COURT:  And I'll sign it.

22          MR. PARIKH:  Because there's a lot of details here.

23   So my preference would be to just read them in.

24          THE COURT:  How long is it going to take you to

25   read into the record?

1          MR. PARIKH:  I would say no more than three or four

2   minutes.

3          THE COURT:  Oh, that's easy.

4          MR. PARIKH:  Right.

5          THE COURT:  Go ahead.

6          MR. PARIKH:  So, Judge, with respect to plaintiff's

7   Interrogatory 2, the LLC defendants, as to the objection

8   Interrogatory Number 1, the parties -- the plaintiffs will

9   deal with that at a deposition.

10          As to Interrogatory Number 4, the parties have, as

11   counsel referred to, have agreed globally that to

12   interrogatories where the response relies upon documents that

13   have been produced, the parties will identify those documents

14   by specific Bates identification rather than providing a

15   summary of what the documents may state or whatever that may

16   be, and we've referred to that as the global agreement

17   regarding Bates identification.

18          So that is the way that the responses to

19   Interrogatory Number 4 of LLC defendants will be

20   supplemented.

21          And with respect to Interrogatory Number 6 of the

22   LLC defendant, they will supplement the response -- what the

23   parties have agreed to is that following the inspection of

24   the books and records, which is going to take place before

25   October 26th, following that, any supplemental questions

 1  necessary will be directed to counsel and then can be

 2  responded to in that manner.

 3          That's it with respect to objections and issues

 4  related to the LLC defendant interrogatories, Judge.

 5          With respect to CT Pizza, the CT Pizza defendant

 6  and the interrogatories there, plaintiffs have agreed to deal

 7  with the objections to Interrogatory Number 1 at a

 8  deposition.

 9          The parties will identify documents referred to or

10  relied upon in response by Bates ID, that's that global

11  agreement as to Interrogatories Numbers 2, 5, 11, and 12.

12          As to Interrogatory Number 4, defendant has agreed

13  to withdraw the objection and identify the applicable

14  documents by Bates ID as well.

15          As to Interrogatory Number 6, CT Pizza has

16  previously sent correspondence regarding this issue and will

17  be sending supplemental correspondence that will serve as

18  their responses to interrogatory.

19          As to Interrogatory Number 10, once the books and

20  records are produced, then CT Pizza has agreed to respond to

21  supplemental requests based upon those books and records so

22  that the inquiry can be narrowed properly.

23          As to supplemental responses will be provided as to

24  Interrogatories 16 and 18.

25          As to Interrogatory 19, CT Pizza has affirmed that

 1    it has only been sued once, related to open invoices.

 2              Those are the issues with respect to the CT Pizza

 3    defendant, Your Honor.

 4              With respect to defendant Krupa Patel, Your Honor,

 5    plaintiffs have agreed to withdraw their objections and rely

 6    on deposition questions for Interrogatories 1, 2, 3, 6, and

 7    10.

 8              The Interrogatory Number 5 will be supplemented by

 9    Ms. Patel with the global Bates identification agreement.

10              Ms. Patel has agreed to clarify in Interrogatory

11    Number 7 that the loan documents referred to in the answer

12    are the CT Pizza financing documents that were executed by

13    Mr. Pandya.

14              As to Interrogatory Number 12, Ms. Patel has agreed

15    to supplement that response.

16              Those are the only issues, Your Honor, with respect

17    to defendant Krupa Patel's interrogatories.

18              With respect to defendant J. Pandya's interrogatory

19    responses, the parties have agreed that Interrogatory

20    Responses 2, 5, and 11 will be supplemented pursuant to the

21    global Bates identification agreement, have agreed that the

22    response to Interrogatory Number 14, that Mr. Pandya will

23    provide a privilege log and identify any other responsive

24    documents by Bates number.

25              Mr. Pandya has agreed to supplement his responses

1   to Interrogatory Number 20 and 22.

2          And as to Interrogatory Number 9, Mr. Pandya has

3   agreed that following the inspection of books and records,

4   that plaintiffs can submit follow-up requests and get more

5   specific answers.

6          There are agreement -- disagreements, Your Honor,

7   with respect to Mr. Pandya's responses to Interrogatory 1,

8   12, 17, 18, and 23.  Other than those, there are no other

9   open issues with respect to Mr. Pandya's interrogatory

10  responses.

11         And, finally, Judge, with respect to the

12  interrogatories propounded by defendants, do you have an

13  issue?  Or no?  I thought you were standing because you

14  panted to stay something.

15         MR. RUSSELL:  No, no, no.  Go ahead.  I'm --

16         MR. PARIKH:  Okay.  All right.

17         Judge, finally with respect to the interrogatories

18  propounded by defendants upon plaintiff Jagdish Patel, the

19  parties have agreed or plaintiff has agreed that Mr. Patel

20  will supplement his responses to Interrogatories Number 2, 5,

21  and 19.

22         With respect to Interrogatory Number 25, Mr. Patel

23  has agreed that he will identify by name and docket number

24  and court any lawsuits where him or Kishan Patel, the other

25  plaintiff, have been named as a party in the last five years.

1           Interrogatories Number 8, 9, and 12, will be

2   supplemented pursuant to the global Bates-stamping -- Bates

3   identification agreement of the parties.

4           And with respect to the Interrogatory Number 10

5   served on Jagdish Patel by the defendants, the defendant has

6   withdrawn all but the last sentence of that interrogatory,

7   and Mr. Patel will supplement his answer accordingly.

8           There are issues that have been raised with respect

9   to Jagdish Patel's responses to Interrogatory Number 6, 11,

10  13, 16, 17, 18, 23, and 24.  Other than that, the defendants

11  have not identified any other deficiencies in the plaintiffs'

12  interrogatory responses, Judge.

13          THE COURT:  Thank you.

14          MR. RUSSELL:  That is accurate, Your Honor.

15          THE COURT:  Okay.  Thank you.

16          MR. RUSSELL:  So, you know, Judge with respect to

17  the document issues, there are really four of them.  One is

18  related to plaintiffs' request for documents related to a

19  lawsuit that had been previously filed in the Eastern

20  District of Pennsylvania against the defendant regarding

21  fraud.

22          The second issue --

23          THE COURT:  Well, what's the issue there?  Why

24  don't you just give him the docket number -- the defendant

25  will give plaintiff the docket number and the parties, and

1   then you can get the information from it.  What about that?

2              MR. RUSSELL:  And that's fine, Judge.  The one --

3   the one thing we wanted from that is the settlement agreement

4   as well in that lawsuit.  We understand there's a settlement

5   agreement.  We're happy to serve a subpoena on that.

6              THE COURT:  But why is that relevant?  I mean, how

7   is a settlement -- I mean, you'd have to show that's

8   relevant, and you have to be relevant to a claim or defense

9   in the case.

10             Now you have a case here where you're -- you know,

11  you're claiming fraud and RICO and fraudulent inducement

12  regarding, you know, deliberately deceiving the plaintiffs

13  into investing into joint ventures which include all these

14  Pizza Huts.

15             So they had a lawsuit in Pennsylvania -- I know I

16  didn't give you a chance to speak, Raj, yet, but I will.

17             And the question is the standard of discovery,

18  although liberal, has to be relevant to a claim or defense.

19             So the fact that they were sued, you know, I think

20  that's -- first of all, it's a matter of public record, and

21  it's fine.  But how does this settlement -- how does that

22  really play into -- how is that relevant to a claim or

23  defense.

24             MR. RUSSELL:  Just so Your Honor's aware, there's a

25  suit involving Mr. Pandya and Dunkin' Donuts and suit

1   involving the plaintiff and Dunkin' Donuts.

2           So I -- my position on this is whatever the Court

3   decides on one, it's -- it's the same issue, because they're

4   looking for documents related to our litigation with Dunkin'

5   Donuts.  We're looking for documents related to their

6   litigation for Dunkin' Donuts.  And that's --

7           THE COURT:  So these are both Dunkin' Donuts as

8   opposed to Pizza Hut?  Or are they the same?

9           MR. RUSSELL:  These are both Dunkin' Donuts, who

10  both were franchisees.

11          THE COURT:  With the same parties?  Or different

12  parties or what?

13          MR. RUSSELL:  Different parties.  My client

14  continues to be a franchisee.  Plaintiff dis -- has

15  discontinued his franchisee.  So --

16          MR. PARIKH:  Judge, first -- the --

17          THE COURT:  Okay.

18          MR. PARIKH:  -- the request for records from that

19  lawsuit was made for the first time today at the

20  meet-and-confer conference.  There's never been a written

21  interrogatory --

22          THE COURT:  Okay.

23          MR. PARIKH:  -- or anything like that.  But -- but

24  with respect to Your Honor's question, to answer it directly,

25  what's the relevance of that lawsuit and some of the

1   information in that lawsuit --

2           THE COURT:  Yeah.

3           MR. PARIKH:  -- is that part of -- part of the

4   allegation here is that there has been a pattern of fraud

5   that the defendants have engaged in and that they've done it

6   over a number of years through a -- with a variety of

7   sources.

8           And the allegations in the complaint of that

9   lawsuit are similar to the allegations in this lawsuit.  And

10  we believe that by exploring what occurred in that situation,

11  despite the fact that that case settled, that we will be able

12  to -- have better information about defendants' pattern of

13  fraud as it has continued, started then and then continued

14  into his -- his new fraudulent attempt to the plaintiffs in

15  this case.

16          One of the issues that -- that is related to that

17  is that in the Dunkin' Donuts complaint, there is a reference

18  to Investor 1, Investor 2, and Investor 3, almost like you'd

19  see in a criminal complaint where a cooperating witness is

20  not identified by name.

21          And what we've asked is for -- for the defendants

22  to identify that person.

23          Now, if defendants are unable to, due to

24  confidentiality or whatever it may be, we're happy to serve a

25  subpoena on Dunkin' Donuts for the file related to that and

 1   fight out the confidentiality issues with respect to the

 2   subpoena and limit it so that's pursuant to the protective

 3   order, attorney's eyes only, whatever -- whatever is

 4   necessary.  But we do believe that -- that those records,

 5   given the allegations in the complaint, which we have the

 6   complaint, but given the allegations in the complaint, which

 7   is publicly filed, as Your Honor mentioned, we believe that

 8   the information related to -- to that case is either directly

 9   relevant to the allegations here of a pattern of racketeering

10   conduct by the defendant entities and the defendant -- the

11   individual defendants as well, or that it could lead to --

12   likely lead to the discovery of admissible evidence.

13           THE COURT:  But how does it -- I hear you.  But how

14   does it -- the settlement -- I mean, that seems like

15   something that, you know, first of all, there's a certain

16   protection under the law for settlement, as you know.

17           MR. PARIKH:  Of course.

18           THE COURT:  I mean that could never be evidential.

19   But I mean, I'm still not sure how -- you know, people settle

20   complaints and cases for all kinds of reasons, not the least

21   of which would be the expense, which both of the parties

22   sitting here should be considering.  We're just -- you just

23   spent a whole day on interrogatories, but --

24           MR. PARIKH:  Of course.

25           THE COURT:  -- but how is the settlement of that

1   case relevant?  I mean, I --

2           MR. PARIKH:  To be -- right, no, and I'll --

3       (Simultaneous conversation)

4           THE COURT:  -- maybe you'll have to put in papers,

5   but go ahead.

6           MR. PARIKH:  I can be very blunt about it, Judge.

7           THE COURT:  Yeah, let's be blunt.

8           MR. PARIKH:  If -- if they're able to identify

9   Investor 1, 2, and 3 and the people that were involved that

10  alleged the fraud that pro -- you know, caused Dunkin' Donuts

11  to file this lawsuit against the defendants, I don't think we

12  need the settlement agreement.  But primary- -- the primary

13  purpose of obtaining that would be to identify the other

14  individuals involved in that lawsuit or the allegations that

15  form the basis of that lawsuit.

16          MR. RUSSELL:  Your Honor indicated when we

17  initially talked about the RICO claim in chambers, you kind

18  of rolled your eyes and said you don't have a RICO claim.

19  The long and short of it is this is the only evidence upon

20  which they base a RICO claim.

21          If there was any fraud in here and there was a suit

22  against Dunkin' Donuts against my client, my client still

23  wouldn't be a franchisee.

24          The bottom line is they were guessing about the

25  predicate act.  They're hoping to get this to go fishing.  I

 1  have no problem, if Your Honor's looking at them saying they

 2  can't get our confidential settlement with regard to Dunkin'

 3  Donuts in which my client continues to be a franchisee.  And

 4  you look at us and say you can't get their agreement.

 5         Now, he was kicked out of the Dunkin' Donuts

 6  franchise as a result of his lawsuit.  So Dunkin' Donuts

 7  treated them very differently.

 8         And I'll let you figure out which is going to be

 9  the predicate act.

10         But this is a total guess about this lawsuit and --

11  and what it was and what it resulted in.

12         THE COURT:  Well, I mean, did -- is the plaintiffs'

13  lawsuit or the lawsuit against the plaintiff, was that

14  involved by settlement or a judgment?

15         MR. PARIKH:  The lawsuit that plaintiff was

16  involved with Dunkin' Donuts, Your Honor, was -- I think it

17  was filed back in 1998 or so.

18         THE COURT:  Yeah.

19         MR. PARIKH:  It was resolved by settlement in 2003

20  as well.

21         But -- but with respect to that request which was

22  made today, as I noted --

23         THE COURT:  Yeah.

24         MR. PARIKH:  -- what our objection has been that

25  that's not relevant to any of defendants' claims or defenses

 1    in this case.  Whether -- you know, our basis for seeking the

 2    information related to this one lawsuit of defendant is that

 3    there's allegations of fraud.  There's -- you know, here,

 4    there's -- there's really no relevance.  And we've agreed to

 5    produce the -- the names of all lawsuits that the plaintiffs

 6    have been involved in the last five years.  I don't know why

 7    we need to go back --

 8              MR. RUSSELL:  And it would be --

 9              MR. PARIKH:  -- 15 years to get the information.

10              MR. RUSSELL:  -- it would be our position that that

11    agreement not only had fraud allegations but resulted in the

12    plaintiffs' elimination as a franchisee, and he's presently

13    in violation of that presently.

14              So that indicates when -- where indicating fraud,

15    we believe there's a present fraud being committed on Dunkin'

16    Donuts as a result of that.

17              And I'm --

18              THE COURT:  Well, let me ask you a question,

19    Mr. Russell.  First of all, I just want to make one thing

20    clear.  I mean, if I -- I may have rolled my eyes in chambers

21    and -- but, you know, a lot of what magistrate judge is --

22    does is informal.  And we're here on the record today.

23    But --

24              MR. RUSSELL:  Yeah, I maybe I should --

25              THE COURT:  You -- no, that's fine that you said

|Hearing
|14-cv-08127, September 10, 2015

```
 1  that.  I have no problem.  But it doesn't -- just for your
 2  clients, it doesn't have much meaning.
 3          Judge Martini on July 27th denied a 12(b)(6)
 4  motion, as I recall.
 5          So whatever's in the pleading is in the pleading.
 6  And until you get to summary judgment or trial or whatever,
 7  it's there.
 8          So I -- you know, I just want to make -- just so
 9  we're clear on that, regardless of what I might think.
10          But I guess, it's a little hard to maybe to do this
11  right off the top of my head.  I'm trying, just for your own
12  benefit and your clients' benefit, you spent so much time
13  here, are you willing to -- Mr. Russell, is your client
14  willing to identify have the number -- persons 1, 2, and 3?
15  That seems to be what they're asking for.  Are you willing to
16  identify that or not?
17          MR. RUSSELL:  Well, I think, Your Honor, we were
18  looking for -- if the Dunkin' Donuts suits are relevant, then
19  the Dunkin' Donuts are relevant.
20          I -- my understanding too -- by the way, the
21  implication it's criminal, Dunkin' Donuts, apparently, names
22  parties in that manner so that people's names aren't on the
23  dockets.  So, apparently, they -- they do that, and that's a
24  specified way of doing it.  It wasn't done for any hidden
25  reason.  Everybody knew who they were.  They were just named
```

|Hearing
|14-cv-08127, September 10, 2015

```
 1   in a specific fashion.

 2           But if we -- if Your Honor -- I have no problem

 3   with if Your Honor believes both Dunkin' Donuts information

 4   is relevant and open discovery to everybody about what's

 5   going on, make the decision later on about things not being

 6   relevant, you know, that's not a problem with us.

 7           THE COURT:  I don't know how to handle -- I am

 8   not -- I mean, maybe you have to put this in writing, I hate

 9   to do that.  But --

10           MR. PARIKH:  Yeah --

11           THE COURT:  -- only because I am not -- it's all so

12   general right now.  I don't know.

13           MR. PARIKH:  It is, I understand.

14           THE COURT:  I mean, are you willing to produce your

15   Dunkin' Donuts case?

16           MR. PARIKH:  Honestly, the problem with that,

17   Judge, is that the case was so long ago, and it really is

18   not -- you know, the -- we have a claim of fraud, RICO, Judge

19   Martini found that it was adequately pled.

20           THE COURT:  Yes.

21           MR. PARIKH:  And they don't.  They have a

22   counterclaim --

23           THE COURT:  Right.

24           MR. PARIKH:  -- that says we owe money on capital

25   calls.  What --
```

1          (Simultaneous conversation)

2               MR. RUSSELL:  And a fraud claim.  And a fraud

3    claim.

4               MR. PARIKH:  And -- and -- but related to -- to the

5    plaintiffs' --

6          (Simultaneous conversation)

7               MR. RUSSELL:  -- his -- your plaintiffs' fraud.

8               MR. PARIKH:  The counterclaim, Your Honor.

9               THE COURT:  Can you -- can you do me a favor?  Can

10   I just -- could you put it on hold, Lorraine?

11         (Pause in proceedings)

12              THE COURT:  Are we back?  Okay.  We're back on the

13   record.  I'm sorry.

14              But you were saying?  Yeah, there --

15              MR. PARIKH:  Yeah, no problem, Judge.

16              So -- so I viewed -- if you want it -- and that's

17   two of the four issues on documents, Judge, is Dunkin'

18   Donuts, our request for the lawsuit information Dunkin'

19   Donuts from defendants and their request.

20              I view them as mutually exclusive issues.  We have,

21   as I mentioned, allegations of fraud and RICO.  Complaint

22   that we're trying to seek information from, the identity of

23   those investors, was a complaint that sounded in fraud.

24              Defendants' counterclaim has alleged -- and it was

25   just recently filed so we haven't even responded to it yet,

 1  but has alleged fraud, although we don't think it's pled with

 2  specificity, but it's alleged fraud that -- and the

 3  allegations of fraud are that plaintiffs in entering into

 4  this agreement with the defendants to purchase these

 5  franchises in Connecticut, didn't actually have enough money

 6  to pay capital costs.  That's the allegation of fraud.

 7          I don't know how on earth a lawsuit against Jagdish

 8  Patel, which was filed 15 years ago could provide any

 9  discoverable information related to that counterclaim, even

10  if it was read in the broadest terms of -- in the benefit of

11  the pleading party, which is the defendants here.

12          So we would think that there's a -- there's an

13  adequate basis to compel the defendants to identify Investor

14  1 and 2 -- 1, 2, and 3, from that Dunkin' Donuts lawsuit is

15  to provide additional information regarding that lawsuit, to

16  the extent it's not publicly available, and -- and at the

17  same time, we would -- we would note we don't believe that

18  plaintiffs [*sic*] have satisfied even that minimum threshold

19  required to obtain discovery from the plaintiffs regarding

20  such an old lawsuit because, really, all that would be would

21  be a fishing expedition for irrelevant information.

22          THE COURT:  Yeah.  I don't know.  I mean, let me

23  ask you a question.  This 1, 2, and 3 business, they were

24  name parties in the case?

25          MR. JACOBS:  No, I believe --

1              -- MR. RUSSELL:  They're just a -- name.

2              MR. PARIKH:  I believe what happens, Judge, in

3      those cases, typically is that if -- if someone -- if someone

4      feels as though that they're a minority investor in a Dunkin'

5      Donuts and they feel as though they're being taken for a ride

6      by their majority investor, they'll report it to Dunkin'

7      Donuts directly.  Dunkin' Donuts then conducts an

8      investigation and files a lawsuit.

9              MR. RUSSELL:  Yeah, and you'll see -- Dunkin'

10     Donuts, my client continues to be -- again, this apparently

11     is a predicate act where Dunkin' Donuts sues my client and

12     whatever happened, he's still a franchisee.

13              In their case, they have a -- Dunkin' Donuts sues

14     the plaintiff.  He's terminated as a franchisee.  So that --

15     if you want to figure out which one Dunkin' Donuts thought

16     was wrongdoing or committed fraud in that, it's not my

17     client.

18              In addition to that, yes, we're alleging fraud.

19     And that's -- those -- those -- we believe that Dunkin'

20     Donuts found fraud, and that's why he's terminated from the

21     system.

22              My client continues to remain a good-standing

23     member of that entity.

24              So if Your Honor looks and says both are relevant,

25     pursuant to, you know, those standards, both are relevant.

1          THE COURT:  Well, I'll -- you know, I can't tell

2    from what you're just saying here.  They seem to be -- I'll

3    be honest with you, both of them seem to be on the -- the far

4    outer reaches of possible relevance.  None of them seem to be

5    too relevant to the claim here.  I mean, they're different

6    cases.  You know?  I don't know.

7          If you want to put it in a letter or something,

8    I'll do it.  I don't -- is it worth your time and expense to

9    do this, to fight over Dunkin' Donuts cases?  Maybe.  That's

10   up to you.  It's hard to do it just sitting here.

11         MR. PARIKH:  I --

12      (Simultaneous conversation)

13         THE COURT:  -- you know, I can't tell.  I don't

14   really know about that.

15         MR. PARIKH:  Absolutely.

16         THE COURT:  I know your complaint basically, what

17   it's about, but what some prior litigations and Dunkin'

18   Donuts have to do with it, it's kind of hard to do.  So if

19   you want to raise that, you can put it in double-spaced

20   letters --

21         MR. PARIKH:  Sure.

22         THE COURT:  -- with the exact question and, I guess

23   what the answer is or what -- you're seeking to be

24   convince -- to compel.

25         MR. PARIKH:  Yeah, maybe it's just a --

```
 1        (Simultaneous conversation)

 2            THE COURT:  -- double-spaced, and I'll take a look

 3   at it and I'll make a decision.

 4            But what you should address there, very clearly and

 5   directly and briefly is what claim or defense in this case is

 6   the information you're seeking on both sides relevant to.

 7   And I'm having a hard time really understanding that at the

 8   moment.  It's -- you know, I can see where, you know,

 9   speaking perhaps more practically than just pure legally, you

10   know, if there were other lawsuits significance franchisees,

11   you know, you're trying to show that the -- perhaps there's

12   some negative information in there or that -- that could be

13   used.  But I mean, does it really have to do with the claims

14   in the complaint and the defenses alleged or the counterclaim

15   here?  I can't tell exactly from what you're saying.  I just

16   can't.

17            So I'm afraid I can't -- I'd like to resolve that

18   for you.  But if you really want to -- if you think that's

19   worth proceeding with that one, I think you're going to have

20   to put together a little -- you know, a double-spaced letter

21   on it.

22            What's the next dispute that you have?

23            MR. PARIKH:  There's a dispute, Judge, defendant

24   today also again for the first time raised that he would like

25   plaintiffs' bank records prior to the closing of CT Pizza,
```

 1   the acquisition of CT Pizza.

 2            THE COURT:  What possible relevance does that have,

 3   Mr. Russell?  That --

 4            MR. RUSSELL:  Well.

 5            THE COURT:  -- that's the kind of thing you usually

 6   get after there's a judgment or on your counterclaim, I mean.

 7   You can't usually ask for -- I guess you're going to explain

 8   it to me.  I didn't give you a chance yet.  But you can't --

 9   you ask for how much money people have or how they spend

10   their money unless you have a real --

11            MR. RUSSELL:  It's not -- it's not going after the

12   judgment, Your Honor, part of the claim is not only did my

13   client and the plaintiff enter into partnership to purchase

14   existing Pizza Hut franchises --

15            THE COURT:  Pizza Huts.

16            MR. RUSSELL:  -- but there was also an agreement to

17   build, a requirement to build an additional -- I -- how many?

18   Initial 20 new Pizza Hut restaurants.

19            THE COURT:  Build.

20            MR. RUSSELL:  Build.

21            THE COURT:  20 new Pizza Huts.

22            MR. RUSSELL:  20 new Pizza Hut restaurants.

23            So the -- the information given to my client was,

24   yeah, because it was -- one total deal, Pizza Hut was going

25   to allow them this -- without agreeing to build 20 new ones.

1   So my client essentially looked at plaintiff and said,

2   listen, we're going in here, but you know there's a lot of

3   capital that's required to build 20 Pizza Hut restaurants.

4   And he made representations that, in fact, he did have that

5   capital necessary.

6           Obviously, my client now has $2.4 million

7   additional in capital in this project.  The plaintiff hasn't

8   made any of the capital calls.  We believe that plaintiff

9   gave us -- it was fraud in the inducement, told us that he

10  had the resources to build out the 20.  Now he's not

11  providing any money towards the 20.  In fact, we were -- that

12  development agreement has now been terminated by Pizza Hut.

13  My client's personally responsible for those obligations.

14  Plaintiff is not.  Only my client is personally responsible.

15  That agreement was terminated.  He's now obligated to do

16  that.

17          THE COURT:  I guess -- go ahead, Mr. --

18          MR. PARIKH:  Judge, none of the allegations

19  regarding the development agreement are in the counterclaim.

20  Not one.

21          The counterclaim is entirely focused on capital

22  calls.

23          THE COURT:  On what?

24          MR. PARIKH:  On capital calls.

25          MR. RUSSELL:  Capital calls.

 1            MR. PARIKH:  On capital calls for the entity.  If
 2    the entity's losing money, then the -- the individuals are
 3    responsible for contribute money.
 4            And the operating agreement, which governed this
 5    entity, has -- you know, has a backup plan, basically that if
 6    a member does not pay its capital calls, then their ownership
 7    value gets diluted.  It's -- you know, straightforward in
 8    that sense.
 9            And this is presuming everything in their
10    counterclaim is true, which, obviously, we dispute.
11            But there's not one allegation in the entire
12    counterclaim that relates to the development agreement and
13    obligation.  I don't know how on earth our perm banking
14    records could be relevant.  From -- from before the closing.
15            THE COURT:  Well, I -- it seems far-fetched in
16    certain respects.  I guess there could be a question whether
17    it be at a deposition or otherwise.  I am not going to tell
18    you how to take depositions or how to do your discovery as to
19    what Mr. Russell said; in other words, asking Mr. Patel
20    whether he represented at some time that he had the capital
21    or the wherewithal to build or finance 26 or however many new
22    Pizza Huts.  And if the answer was yes -- and if the answer
23    was no, that changes it around.  If the answer was yes, I
24    guess you could ask for -- you know, sort of give an outline
25    of where -- where the -- you know, of the basis for your

 1   statement that you had the capital.  I don't know if that's

 2   in the pleading.  You're saying that's not even in the

 3   pleading anywhere or what?

 4           MR. PARIKH:  The only allegation in the

 5   counterclaim, Judge, relates exclusively to -- to these

 6   capital calls and defendants' allegation that the plaintiffs

 7   had a deal to be 25 percent owners of these entities in

 8   Connecticut and that they owe -- that plaintiff has been

 9   responsible for putting in $2.4 million in capital calls and

10   that defendant has not contributed their -- their share, and

11   that defendants were fraudulent in saying that they had the

12   money to make those capital calls.

13           MR. RUSSELL:  And we -- and we fund the development

14   agreement through requests of the partners to put in money to

15   the business through capital calls.

16           MR. PARIKH:  It's not in the -- it's not in the

17   counterclaim, Judge.

18           THE COURT:  Pardon me.

19           MR. PARIKH:  It's not in the counter -- that's not

20   in the counterclaim.

21           MR. RUSSELL:  The ability --

22        (Simultaneous conversation) that's how --

23           MR. PARIKH:  It's not alleged in the counterclaim.

24           MR. RUSSELL:  That's how a partner makes a request

25   of another partner to finance the business, including the

 1  operating agreements, capital calls, $2.4 million later,

 2  plaintiff has not made one.  So whether it's the op- --

 3  whether it's the development agreement, whether it's the --

 4  it's the rent, maybe it's the payroll, my client's $2.4

 5  million in and that's what the capital call is.  Anyway.

 6         MR. PARIKH:  I think, Judge, I think what you

 7  articulated in terms of asking did the deposition, and then

 8  if --

 9         THE COURT:  Yeah, I --

10         MR. PARIKH:  -- at that point, there's documents

11  that are needed --

12         MR. RUSSELL:  I'm more than happy to ask him at the

13  deposition.

14         THE COURT:  I think it is -- you know, I know you

15  did resolve some of your other disputes by referring to

16  things at deposition.  But I think that really one -- I mean,

17  to just -- even -- even you say his -- his bank account or

18  which bank account, and then -- well, maybe he has another

19  brokerage account or maybe he was going to borrow the money

20  from his cousin or may have been he was going to borrow the

21  money from, you know, Wells Fargo or -- who knows?  I'm just

22  trying to say that that one bank account, if it is one, you

23  know, I think is -- I am not sure that goes directly to --

24         MR. RUSSELL:  I'll wait and ask that through

25  depositions, Your Honor.

 1            THE COURT:  I think you have to do it.  You may

 2    come back to me and say, yeah.  At that point, we may want to

 3    see some documents.

 4            But I can't say that one at the moment.

 5            What's next?

 6            MR. PARIKH:  So, Judge, the last issue is an issue

 7    that we had raised with Your Honor on a telephone conference

 8    quite some time ago regarding the plaintiffs' belief that the

 9    defendant improperly obtained confidential business records

10    of the plaintiff.  And we have -- I think it may be easier to

11    identify how that's going to be resolved in -- in the

12    interrogatories, because there are interrogatory issues

13    there, but that is a document issue as well, but if we can --

14    if you want to go through the interrogatories, then,

15    obviously, we can deal with it at that point in time, in

16    terms of the objections that Your Honor --

17            MR. RUSSELL:  Your Honor, we have probably 15 to 20

18    interrogatories -- I don't know whether you'd -- Your Honor

19    wants that in a letter and a phone call or wants it now.

20            THE COURT:  I mean, how -- how difficult are they?

21            MR. PARIKH:  I think some of them may be difficult,

22    Judge.  And -- and, you know, I still believe -- I think

23    there are some where just given the late hour, that perhaps

24    we did need to meet and confer as -- as we should have.

25            THE COURT:  Yeah, well, look, I think you're right.

1  It's getting late.  And I'm -- you know, they close the

2  courthouse, and I want to get you folks on the road and out

3  of town at a reasonable hour.

4           And -- so let's take that up, if you want, by

5  letter or at another conference.  We can have other

6  conferences.

7           MR. PARIKH:  Okay.  Interrogatory -- well, why

8  don't we -- we'll talk, Judge.

9           THE COURT:  Is there anything else right now you

10 want to put on the record?  Because I want to just talk to

11 you off the record for a minute.

12          Go ahead.

13          MR. PARIKH:  There's only two other things, Judge.

14 There is -- we resolved an issue related to a third-party

15 subpoena to Bob Nathan, earlier -- and counsel and I know

16 what that agreement was.  Basically we agreed to language for

17 one paragraph limiting it, and there's an agreement between

18 the parties respect to certain third-party subpoenas that if

19 there's a need to seek additional information from those

20 third parties based upon their initial productions, then

21 there's no waiver of the ability to do that.

22          And then the last thing, Judge, is that earlier

23 this week, I was out of the country on business, but we

24 received notices of third-party subpoenas, I think six of

25 them from plaintiffs [*sic*].  We haven't yet had the

|Hearing
|14-cv-08127, September 10, 2015

1   opportunity to review those.  But we'll meet and confer on

2   those as well.

3           But other than those issues, Judge, there are no

4   other outstanding discovery issues between the parties.

5           THE COURT:  Well, good, I want -- I mean, I just

6   want to thank you for spending the time and working so hard

7   on it today.

8           Let's go off the record.

9            (Conclusion of proceedings at 5:25 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3    that the 40 pages contained herein constitute a full, true,

4    and accurate transcript from the official electronic

5    recording of the proceedings had in the above-entitled

6    matter; that research was performed on the spelling of proper

7    names and utilizing the information provided, but that in

8    many cases the spellings were educated guesses; that the

9    transcript was prepared by me or under my direction and was

10   done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12   the parties hereto nor am I in any way interested in the

13   outcome hereof.

14

15

16

17

18   S/ *Sara L. Kern*                        30th of September, 2015

19   _____        _____
     Signature of Approved                        Date
20   Transcriber

21
     Sara L. Kern, CET**D-338
22   King Transcription Services
     3 South Corporate Drive, Suite 203
23   Riverdale, NJ  07457
     (973) 237-6080
24

25