**GENOVA BURNS LLC**
Rajiv D. Parikh, Esq.
Maria R. Fruci, Esq.
494 Broad Street
Newark, New Jersey 07102
Telephone: (973) 533-0777
Facsimile: (973) 533-1112
rparikh@genovaburns.com
mfruci@genovaburns.com
*Attorneys for Plaintiffs*
*Jagdish Patel and Kishan Patel*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAGDISH PATEL and KISHAN PATEL,<br><br>Plaintiffs,<br><br>v.<br><br>JIGNESH PANDYA, KRUPA PATEL, JNP FOODS, LLC, RONAK FOODS, LLC, ROHAN PROPERTIES, LLC, SHREE SIDDHIVINAYAK, LLC, HARIDRA, LLC, SRI PRATHAMESH, LLC, CT PIZZA, LLC, EDISON PIZZA, LLC, JOHN/JANE DOES 1-10, and XYZ COMPANIES 1-10,<br><br>Defendants. | Civil Action No.: 14- 8127(WJM)(MF)<br><br><br>**RICO CASE INFORMATION STATEMENT** |

**Introduction**

Plaintiffs, Jagdish Patel ("Jagdish") and Kishan Patel ("Kishan") (collectively, "Plaintiffs") submit this RICO Case Information Statement pursuant to the directives of the Court and pursuant to Local Civil Rule 16.1(b)(4). Plaintiffs reserve their right to amend and/or supplement this statement as this matter proceeds through discovery and additional information is acquired. All capitalized terms in this pleading shall have the meaning set forth in the Amended Complaint [Docket Entry No. 52] (the "Complaint").

1

As the Court may recall, the Complaint was filed on or about October 26, 2014. Defendants subsequently filed a motion to dismiss the Complaint – specifically all fraud-based claims and RICO claims against them – on or about February 11, 2015 [Docket Entry No. 13]. Following briefing by Plaintiffs and Defendants, and oral argument, the Court denied Defendant's motion. In the Court's Opinion, the Honorable William J. Martini, U.S.D.J. found that Plaintiffs have: (1) plead the fraud claims with the requisite specificity to satisfy Rule 9(b) and moreover that Plaintiffs specifically identified the falsified documents as well as the actual false statements; (2) sufficiently allege wire fraud; (3) established the existence of an enterprise, and met the distinctiveness requirement alleging a person, and a separate enterprise; and (4) adequately plead the alter ego theory of liability and that the Complaint adequately puts Defendants on notice of the factual claims Plaintiffs intend to prove to pierce the corporate veil and find the corporate defendants to be liable as alter egos of Jignesh Pandya ("Pandya") and Krupa Patel ("Krupa"). See July 25, 2015 Opinion of the court [Docket Entry No. 34] (the "Opinion").

Subsequently, Plaintiffs were directed to file this statement and therefore, provide the following.

**1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. §1962(a), (b), (c) and/or (d).**

<u>RESPONSE:</u> The alleged unlawful conduct is in violation of 18 U.S.C. §1962(c)-(d).

**2. List each defendant and state the alleged misconduct and basis of liability of each defendant.**

<u>RESPONSE:</u> This case involves two central frauds perpetrated by Pandya, with the assistance of Krupa (the "Individual Defendants"), in which Pandya deliberately deceived Kishan and Jagdish into "investing" substantial sums of money into "joint ventures" that were solely designed to line Pandya's pockets and fund his lavish lifestyle. Indeed, following Plaintiffs' payments to Pandya for purported down payments in connection with the Connecticut and New Jersey Deals, Pandya purchased a new Bentley and new Ferrari. Pandya and Krupa, with the assistance of others, engaged in a scheme to attempt and/or to defraud, steal and obtain property and money by means of false and fraudulent pretenses, misrepresentations and theft, and to conceal their conduct by false and fraudulent pretenses, misrepresentations and false declarations. Moreover, they agreed and conspired to conceal their activities in furtherance of their scheme to defraud Plaintiffs. Specifically, Pandya and Krupa engaged in a pattern of racketeering activity comprised of numerous predicate acts – including the creation of false and/or fraudulent documents and the submission of same via mail to Plaintiffs and/or others and/or the acceptance of payment via wire from Plaintiffs stemming from Defendants' fraudulent conduct.

Pandya and Krupa used various business entities – defendants JNP Foods, LLC, Ronak Foods, LLC, Rohan Properties, LLC, Shree Siddhivinayak, LLC, Haridra, LLC, Sri Prathamesh, LLC, CT Pizza, LLC, Edison Pizza, LLC Ronak Foods Management LLC, the Rohan Group of

3

Properties and potentially others (the "Corporate Defendants") – to assist them in furthering their scheme to defraud Jagdish and Kishan.

Plaintiffs' allegations of misconduct forming the basis of liability against Pandya and Krupa related to the Connecticut Deal are set forth in the Complaint at Paragraphs 31 through 60 and 89 through 108. The facts and allegations which form the basis of liability against Pandya and Krupa related to the New Jersey Deal are set forth in the Complaint at Paragraphs 61 through 108. See also Opinion at *5-7.

**3. List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

**RESPONSE:** Other than the defendants listed above, alleged wrongdoers include the Corporate Defendants, Robert Nathan, Esq., Paren Dixit and potentially unknown individuals or entities who may be identified as discovery proceeds.

Specifically, Pandya and Krupa utilized the Corporate Defendants as shell companies to assist them in furthering their scheme to defraud Plaintiffs, as well as to hide information from Plaintiffs concerning their investments in the various businesses with Pandya. Nathan and Dixit – accordingly to Pandya – refused to provide information to Plaintiffs and/or were going to charge Plaintiff with fees and charges if they requested information on a return of their monies from the New Jersey deal. In addition, Pandya advised Plaintiffs that he had provided monies for the down payment of the New Jersey Deal to Mr. Nathan to hold in escrow. See e.g. paragraphs 109 through 113 of Plaintiffs' First Amended Complaint; Opinion at *3 and 6.

**4. List the alleged victims and state how each victim was allegedly injured.**

**RESPONSE:** Plaintiffs are the victims of the alleged unlawful conduct. Specifically, Kishan and Jagdish have both suffered injury including, but not limited to, loss of monies totaling well over $900,000.00 plus interest, which has also affected their overall economic position. In addition, because Defendants have refused to return their monies, Kishan and Jagdish have been forced to incur additional expenses including attorneys' fees and other related costs. Jagdish's reputation in the community has also been threatened.

Upon information and belief Pandya fraudulently obtained $610,000.00 from three individuals involved in a Dunkin Donuts business with Pandya in a similar scheme which the Court described as a Ponzi scheme. See Paragraphs 18 through 22 of the First Amended Complaint; see Opinion at *1.

Other non-party business partners of Pandya and/or the Corporate Defendants may have also been victimized in similar schemes.

**5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:**

    **a. List the alleged predicate acts and the specific statutes which are allegedly violated;**

    **b. Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;**

    **c. If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, provide the "circumstances constituting fraud or mistake [which]shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;**

    **d. State whether there has been a criminal conviction in regard to the predicate acts;**

    **e. State whether civil litigation has resulted in a judgment in regard to the predicate acts;**

    **f. Describe how the predicate acts form a "pattern of racketeering activity"; and**

    **g. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.**

    <u>**RESPONSE:**</u> The following events constitute the predicate acts, and related information, of the Individual Defendants' racketeering activity at issue here:

<u>Connecticut Deal</u>

- Pandya's misrepresentation of facts to Plaintiffs surrounding the Connecticut Deal – in or about July 2011:

    o Providing false and/or altered information concerning alleged projected profits of Connecticut Franchises to Plaintiffs; and

    o Pandya and Krupa's consistent evasion tactic to avoid providing Plaintiffs with requested financial and other information or documents; and

- o Pandya's misrepresentations concerning the down payment including needing same in cash to avoid financing fees on or about July 12, 2011;
- Pandya's acceptance of $350,000.00 from Plaintiffs for alleged down payment of the Connecticut Deal – on or about July 12, 2011;
- Pandya's misrepresentations to Plaintiffs concerning the exclusion of an alcohol license for the Connecticut Franchises in the Connecticut Deal – in or about August 2011;
- Pandya's acceptance of $135,000.00 from Plaintiffs for alleged payment of alcohol license – on or about August 4, 2011;
- Pandya and Krupa's altering of closing documents, and providing same to Plaintiffs via email, for the Connecticut Deal – on or about April 23, 2014;
- Pandya's improper use of funds to have CT Pizza retain management companies that he owned and/or controlled at a cost of over $650,000.00 annually;
- Pandya provided a check to Plaintiffs in the amount of $34,000.00, allegedly representing the profits for the Connecticut Franchises from August 21 through December 31, 2011, but having improperly charged finance fees; and
- Pandya and Krupa have continuously sought additional money from Plaintiffs in the form of capital contributions claiming the Connecticut Franchises' poor performance was due, among other reasons, to a fire at one store (upon information and belief had occurred years prior), Hurricane Sandy, and the opening of two new stores.

New Jersey Deal

- Pandya's misrepresentations to Plaintiffs concerning the alleged deal in principle for the New Jersey Deal, including purported collective annual sales volume for the New Jersey Franchises – in or about October 2011;
- Pandya's misrepresentation to Plaintiffs concerning the creation of an entity called Edison Pizza LLC in or about October 2011;
- Pandya's misrepresentations to Plaintiffs concerning the down payment for the New Jersey Deal – or about December 16, 2011:
    o Pandya falsely advised Plaintiffs that in the event the New Jersey Deal did not close, their money for a down payment would be returned to them;
    o Pandya falsely stated that the down payment was to be placed in escrow with attorney; and
    o Subsequently Pandya advised Plaintiffs that he (Pandya) had paid entire down payment to attorney trust account and needed Plaintiffs to prove down payment to him directly;
- Pandya's acceptance of $295,000.00 from Plaintiffs for alleged down payment of the New Jersey Deal – on or about December 16, 2011;
- Pandya's acceptance of $185,000.00 from Plaintiffs for additional ownership in the alleged New Jersey Franchises – on or about December 26, 2011;
- Pandya's refusal to provide Plaintiffs with Mr. Nathan's contact information; and
- Pandya threatening Plaintiffs that there would be a loss of $400,000.00 plus attorneys' fees if they continued to demand a return of their monies related to the New Jersey Deal.

Many of the above misrepresentations were conveyed to Plaintiff via email and telephone, as the Court recognized in the Opinion. See page 6. Pandya also transmitted various fraudulent and/or altered documents to Plaintiffs via email as well as the United States mail in furtherance of the Individual Defendants' scheme to defraud Plaintiffs. Each such email or mail sent constitutes an independent predicate act in the Individual Defendants' continuous and logically-connected pattern of racketeering activity. Pandya also threatened to negatively impact Plaintiffs' financial well-being and/or business reputations.

Plaintiffs are not aware of a criminal conviction or civil judgment in regard to the predicate acts. Also, as set forth above, the alleged predicate acts relate to one another as part of a common plan to defraud Kishan and Jagdish, and to conceal this fraud and/or prevent Kishan and Jagdish from seeking recovery of their monies.

See also Plaintiffs' response to section 2 above as well as Paragraphs 23 through 113 and 122 through 132 of the Complaint. In addition, Plaintiffs' briefing related to the Motion to Dismiss and the Opinion, at pages *5 - 7, provide further detail in response to this question.

**6. State whether the existence of an "enterprise" is alleged within the meaning of 18 U.S.C. §1961(4). If so, for each such enterprise, provide the following information:**

    **a. State the names of the individuals, partnerships, corporations, associations or other legal entities, which allegedly constitute the enterprise;**

    **b. Describe the structure, purpose, function and course of conduct of the enterprise;**

    **c. State whether any defendants are employees, officers or directors of the alleged enterprise;**

    **d. State whether any defendants are associated with the alleged enterprise;**

    **e. State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and**

    **f. If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

<u>**RESPONSE:**</u> Yes, the existence of an "enterprise" is alleged in this action as set forth in the Complaint. The Individual Defendants, utilizing the Corporate Defendants and others, working together and/or through one another, constitute an enterprise within the meaning of 18 U.S.C. §1961(4). <u>See</u> <u>also</u> Paragraphs 123 and 124 of the Complaint.

Pandya is the leader of the enterprise, with Krupa as second in command to assist Pandya in their illegal activities as set forth above. The Corporate Defendants, and other non-parties, were then used by Pandya and Krupa to assist them in furthering their enterprise's misconduct and/or to obscure their conduct to defraud Kishan and Jagdish of hundreds of thousands of dollars. In other words, the enterprise here, was a vehicle through which Pandya and Krupa's unlawful pattern of racketeering activity – the extraction of money and attempts to prevent the recovery of same by Plaintiffs and concealing the fraudulent transactions – was and continues to be committed. Indeed, Pandya directly conducted the enterprise's affairs, with the help of Krupa, and intermingled funds from the various Corporate Defendants with that of his own personal and

family accounts. See Opinion at *7. See also Paragraphs 126 through 130 of Plaintiffs' First Amended Complaint.

Upon information and belief, Pandya and Krupa, utilized similar schemes to defraud other non-parties since 2006.

None of the Defendants are employees, officers or directors of the alleged enterprise, nor the enterprise itself. Rather, the Individual Defendants and the Corporate Defendants were associated with the alleged enterprise. Id. See also Paragraphs 124 through 130 of Plaintiffs' First Amended Complaint. More specifically, the Individual Defendants are perpetrators of the racketeering activity and utilized the assistance of the Corporate Defendants, which are passive tools, to further their fraudulent activities.

**7. State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

**RESPONSE:** The pattern of racketeering activity is separate from the enterprise as the Individual Defendants still run and operate the Corporate Defendants, which are separate and/or legitimate businesses. The allegations responsive to this request are summarized on Page 7 of the Opinion. In addition, upon information and belief Edison Pizza LLC was never actually incorporated.

**8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

  <u>RESPONSE:</u> The allegations regarding the relationships between Pandya, Krupa the Corporate Defendants and other non-parties to the activities of the enterprise are summarized in the Opinion at page 7. These activities were separate from those businesses run by Pandya and/or Krupa which are owned, managed or operated by the Corporate Defendants. <u>See</u> <u>also</u> Complaint at ¶¶ 4-13, 44, 51, 71, 90-92, and 109-113.

**9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

  <u>RESPONSE:</u> The enterprise has obtained hundreds of thousands of dollars from Kishan and Jagdish as a result of the racketeering activity, and benefitted financially in other ways through taxes and other means. <u>See</u> the Complaint at ¶¶ 45, 51, 59, 78, 83, 90 and 92.

**10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

  <u>RESPONSE:</u> The enterprise has used interstate wire communications, including telephone and email, and the mails to carry out its scheme to defraud, steal, and obtain property and money from Plaintiffs by means of false and fraudulent pretenses, misrepresentations and theft, as well as to conceal the illegal conduct. In addition, the conduct emanated from the Commonwealth of Pennsylvania and was directed at New Jersey and Connecticut using individuals and institutions in other parts of the United States. <u>See</u> <u>also</u> Paragraphs 31 through 113 and 127 through 130 of the Complaint, and the Opinion at *6.

**11. If the complaint alleges a violation of 18 U.S.C. §1962(a), provide the following information: a. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and b. Describe the use or investment of such income.**

      **RESPONSE:** Not applicable.

**12. If the complaint alleges a violation of 18 U.S.C. §1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

      **RESPONSE:** Not applicable.

**13. If the complaint alleges a violation of 18 U.S.C. §1962(c), provide the following information:**

      **a. State who is employed by or associated with the enterprise; and**

      **b. State whether the same entity is both the liable "person" and the "enterprise" under §1962(c).**

      **c. Describe specifically how the defendant(s) participated in the operation or management of the enterprise.**

      **RESPONSE:** There is an unofficial association of Pandya, Krupa and the Corporate Defendants in which, Pandya and Krupa as the liable persons, have used the Corporate Defendants, and other non-parties, to extract and retain money from Plaintiffs, and other non-parties, as well as to conceal their fraudulent transactions, acts and omissions. See Plaintiffs' responses to questions No. 2, 3, 5 and 16 above for specific information concerning the Defendants' participation in the operation and management of the enterprise. See also Opinion at *6-7.

**14. If the complaint alleges a violation of 18 U.S.C. §1962(d), describe in detail the alleged conspiracy.**

    **RESPONSE:** Discovery will reveal that Krupa and/or other non-parties were participants in the enterprise who aided in the enterprise of Pandya by providing material support to what the Court has described as a Ponzi-type scheme. See Opinion at *1; see also Complaint at ¶¶ 38-41.

**15. Describe the alleged injury to business or property.**

    **RESPONSE:** As a direct and proximate result of Pandya and Krupa's pattern of racketeering activity, Plaintiffs have suffered a loss of money stolen from them by Pandya and Krupa through the enterprise, incurred the cost of investigation in an undetermined amount, been harmed in their business relationships and professional reputations, suffered the loss of use of capital, interest and incurred attorneys' fees and costs in connection with the litigation of this matter.

    See also Complaint at ¶¶ 45, 46, 59, 79 and 83 and response to No. 17 below; Opinion at *2-3 and 9.

**16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

    **RESPONSE:** Pandya and Krupa's illegal conduct – namely the pattern of racketeering activity of wire and mail fraud and other criminal conduct in furtherance of their scheme to defraud, steal, extort and obtain and retain property and money by means of false and fraudulent pretenses, misrepresentations and thefts, and to conceal this conduct – led directly and proximately to Plaintiff's loss of a minimum of hundreds of thousands of dollars, in addition to the continued loss of monies resulting from the investigation, instant litigation and impact to relationships and reputation.

**17. List the damages sustained by reason of the violation of §1962, indicating the amount for which each defendant is allegedly liable.**

    **RESPONSE:** The Defendants have caused Plaintiffs to suffer the following damages:

    a.    $350,000.00 for the alleged down payment of the Connecticut Deal;

    b.    $135,000.00 for the purported liquor licenses for the Connecticut Deal;

    c.    $295,000.00 for the initial investment in the alleged New Jersey Deal;

    d.    $185,000.00 for the second investment in the alleged New Jersey Deal;

    e.    Profits withheld from Plaintiffs in an undetermined amount from the Connecticut Franchises, including monies paid to satisfy Defendants' personal debts;

    f.    Monies used for management and other fees without permission or authority of Plaintiffs in connection with the Connecticut Franchises at a minimum of $600,000.00 per year;

    g.    Loss of use of capital;

    h.    Costs for investigation;

    i.    Interest; and

    j.    Attorneys' fees and costs.

Plaintiffs also note that discovery may provide information concerning additional damages Plaintiffs have suffered as a result of Pandya and Krupa's unlawful conduct. See also Complaint at ¶¶ 45, 46, 59, 79 and 83.

**18. List all other Federal causes of action, if any, and provide the relevant statute numbers.**

    **RESPONSE:** See Complaint.

**19. List all pendent state claims, if any.**

    **RESPONSE:** See Complaint.

**20. Provide any additional information that you feel would be helpful to the Court in processing your RICO claim.**

    **RESPONSE:** The Court has already ruled that Plaintiffs have adequately and properly pled claims of RICO liability in the Complaint. See generally Opinion.