**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAGDISH PATEL and KISHAN PATEL,**<br><br>　　　　　　　　　　**Plaintiffs,**<br>v.<br><br>**JIGNESH PANDYA, *et al.*,**<br><br>　　　　　　　　　　**Defendants.** | **Civil Action No. 14-8127 (WJM)**<br><br><br>**OPINION** |

**Fᴀʟᴋ, U.S.M.J.**


This matter comes before the Court upon the motion of Defendants Jignesh Pandya and CT Pizza, LLC for leave to amend their counterclaim.  The motion is opposed.  The motion is decided on the papers.  Fed.R.Civ.P. 78(b).  For the reasons set forth below, the motion is **denied.**


## BACKGROUND

### A.  *Factual Background*

This is an action for fraud and breach of contract.  The facts are complicated and

greatly disputed.  Plaintiffs Jagdish Patel ("Patel") and Kishan Patel ("Kishan") are father and son, respectively.  Plaintiffs claim that Pandya befriended Patel after learning that Patel hoped to invest money that his children, including Kishan, had recently inherited. (Compl. ¶ ¶ 25-26.)   Pandya allegedly proposed that Plaintiffs join him in purchasing nine individual Pizza Hut franchises in Connecticut and development rights for an additional 20 locations ("Connecticut Deal").  (Id. at ¶ 31.)  In July 2011, Pandya formed CT Pizza, LLC ("CT Pizza"), an entity established to own and operate the franchises. (Id. at ¶ 44.)  According to Plaintiffs, the parties entered into a contract pursuant to which Patel would pay $350,000 for a 25% share of CT Pizza.   (Id. at ¶¶ 32-33.)  Around July 12, 2011, Pandya allegedly advised Patel that he immediately needed Patel's cash to close the Connecticut Deal.  In response, Patel provided Pandya with the funds.  (Id. at ¶ 46.)

According to Plaintiffs, Pandya never used the money Patel gave him for the Connecticut Deal.  Instead, Pandya allegedly used the cash to become the full owner of the franchises, while leading Patel to believe he owned a 25% interest.  (Id. at ¶ 47.)[1]  In order to deceive Patel, Pandya and his associate, Defendant Krupa Patel ("Krupa"),  gave

---

[1]Plaintiffs also allege the Pandya perpetrated a similar fraud regarding the purchase of Pizza Hut franchises in New Jersey ("New Jersey Deal").  According to Plaintiffs, Pandya told Patel that the acquisition of the New Jersey franchises would need to be finalized through a limited liability corporation named "Edison Pizza."  Pursuant to the New Jersey Deal, Pandya and Patel would purchase the franchises for $5,900,000; Patel would pay 25% in return for a 25% stake.  The parties ultimately agreed that Patel would buy a 40% stake.  According to Plaintiffs, Pandya represented to Patel that he had already paid Patel's share of the purchase price.  Consequently, Patel wrote a check made payable to Pandya for his purported share of the purchase.  Plaintiffs claim that Pandya never incorporated Edison Pizza nor did he enter into a deal with the seller to acquire the franchises.  (Compl. ¶¶ 77-85.)

Patel a check meant to represent a 25% share of the Connecticut franchises' profits notwithstanding that Patel never owned a stake.  (Compl. ¶ 13.)  Pandya attempted to conceal the fraud by doctoring the purchase price contained in the purported closing documents[2] from the Connecticut Deal.[3]

Pandya and CT Pizza's version of the facts is starkly different.  According to Pandya, he began to negotiate with the existing owner of the individual Pizza Hut franchises located in Connecticut; Plaintiffs were not involved in the negotiations. Pandya formed CT Pizza, alone funding its formation and serving as CT Pizza's only member and owner.  (Counterclaim ¶¶ 9-10.)   Patel allegedly approached Pandya about the possibility of making Kishan a partner in the prospective franchise venture.  (Id. at ¶ 11.)   Patel allegedly represented to Pandya that he had additional funds to contribute to CT Pizza as needed and that he would make whatever contributions were necessary, even though the membership interest would be held in Kishan's name.  (Id. at ¶¶ 13-14, 16.) Pandya offered Kishan a 25% interest in CT Pizza.  On July 12, 2011, Kishan executed CT Pizza's Operating Agreement pursuant to which his membership interest would be

_____

[2]Plaintiffs claim that they demanded to review the financial records relative to the acquisition of the Connecticut franchises.  According to Plaintiffs, Pandya withheld critical information from Plaintiffs and, along with Krupa, ignored and evaded Patel's attempt to secure the closing documents.

[3]Pandya also allegedly told Patel that he bought the liquor licenses separately and that Patel still owed his share of their cost, which amounted to $135,000.  Although Patel believed the licenses had been included in the Connecticut Deal, he gave Pandya the requested sum around August 4, 2011.

reduced if he failed to contribute monies in response to a capital call.  (Id. at ¶ 78.)
According to Pandya, he reasonably relied on Patel's representation when he agreed to
sell Kishan an interest in CT Pizza and when he continued the negotiations with the then-
owner of the nine existing Pizza Hut restaurants.

   In addition to the franchise restaurants purchased by CT Pizza, Pizza Hut provided
Pandya with an opportunity to enter into a development agreement ("development
agreement") to develop at least 16 additional franchise locations throughout Connecticut.
(Id. at ¶ 9.)  The development agreement required members of CT Pizza to contribute
additional capital in order to develop new store locations.  (Id. at ¶¶ 22, 36.)   Patel
allegedly represented that he had funds to contribute to CT Pizza pursuant to the
development agreement and promised to make whatever financial contributions that were
necessary to open additional Pizza Hut restaurants.  (Id. at ¶ 85.)

   After about one year of operation, CT Pizza encountered financial troubles.  (Id. at
¶ 30.)  CT Pizza made capital calls to its members to fund a shortfall.  (Id. at ¶¶ 33, 38-
39.)  According to Pandya, Kishan failed to satisfy his proportionate share of the capital
calls and Patel never contributed any additional funds.  (Id. at ¶ 34.)  As a result of
Plaintiffs' failure to provide capital as required, Pandya claims to have suffered damages,
including loss of franchise opportunities and damage to Pandya's reputation.


**B.  Procedural History**

   On December 31, 2014, Patel and Kishan filed suit asserting 11 fraud-based and

breach of contract claims.  The eleven count Complaint included claims against Pandya, Pandya's associate Krupa, CT Pizza, and a number of limited liability companies owned by Pandya ("Defendants").[4]

On February 11, 2015, Defendants moved to dismiss.  The Court denied the motion on July 27, 2015.  On August 11, 2015, Defendants filed an Answer which included a Counterclaim on behalf of Pandya and CT Pizza ("Counterclaimants"). (CM/ECF No. 40.)  Alleging that Plaintiffs failed to make the required capital contributions under the Operating Agreement, the Counterclaim sought a declaratory judgment that the Operating Agreement permitted the dilution of Kishan's share in CT Pizza, and asserted claims for breach of contract and fraud.  (CM/ECF No. 40.)  Plaintiffs moved to transfer the Counterclaim to the United States District Court for the District of Connecticut arguing that the dispute resolution clause contained in the Operating Agreement requires the claims be brought in Connecticut.  (CM/ECF No. 45.) Alternatively, Plaintiffs sought dismissal of the fraud claim under the economic loss doctrine,[5] the parol evidence rule, and for failure to meet the specificity requirements of Federal Rule of Civil Procedure 9.  (Id.)  While the transfer motion was being briefed, Plaintiffs sought an extension of time to file a motion to add new parties, stating that they

---

[4]The Complaint includes claims for, *inter alia*, fraud and fraud in the inducement, violations of federal and state racketeering statutes (18 U.S.C. § 1961, *et seq.* and N.J.S.A. 2C:41-1, *et seq.)*, breach of contract, unjust enrichment, and conversion.

[5]Plaintiffs argued that the fraud claim was barred by the economic loss doctrine because it sought the same damages under both contract and fraud theories.  (CM/ECF No. 45.)

did not wish to change their substantive claims but only sought to identify two defendants previously pled as fictitious defendants.[6]   The Court granted Plaintiffs' requested extension.  (CM/ECF No. 46.)

Thereafter, in order to avoid further motion practice, the parties submitted a proposed Consent Order pursuant to which the fraud counterclaim would be dismissed without prejudice, Plaintiffs would be permitted to file an amended Complaint naming two previously fictitiously identified defendants, and Plaintiffs would withdraw their motion to transfer.  (CM/ECF No. 50.)  The Court entered the Consent Order on October 19, 2015.  (Id.)  Plaintiffs filed an Amended Complaint on October 26, 2015.  (CM/ECF No. 52.)  )  New counsel entered an appearance on behalf of all defendants on October 27, 2015.  (CM/ECF No. 53.)   On November 23, 2015, Defendants filed an Answer to the Amended Complaint which included the original breach of contract counterclaim and five new counterclaims.[7] (CM/ECF No. 56.)  On December 14, 2015, Plaintiffs moved to strike the newly asserted counterclaims on the grounds that Pandya and CT Pizza failed to obtain leave of Court prior to asserting them, or alternatively, to dismiss them under Federal Rule of Civil Procedure 12(b)(6).  On May 31, 2016, the Honorable William J. Martini entered an Order granting Plaintiffs' motion to strike and permitting

---

[6]Pursuant to the Court's June 4, 2015 Scheduling Order, any motion to add new parties was to be filed by August 14, 2015.  (CM/ECF No. 26.)

[7]The pleading included claims for breach of covenant of good faith and fair dealing, fraud, breach of fiduciary duty, tortious interference with contract, and civil conspiracy.

Counterclaimants to file a motion for leave to amend.  (CM/ECF Nos. 81 and 82.)   In so doing, Judge Martini concluded that "Pandya and CT Pizza raise a number of tort and fraud claims that could have been brought in the original Answer." (CM/ECF No. 81.) Stating that the proposed counterclaims "expand the theory and, thus, the scope of the case," the Court found that Counterclaimants were not permitted to raise the new counterclaims in their amended answer as of right and required either Plaintiffs' consent or leave of court to do so.  (Id.)  In so doing, the Court noted that "it cannot allow leave to amend *nunc pro tunc* without a full consideration of [Counterclaimants'] justifications for the delay . . . ."  (Id.)

### C.  Motion to Amend the Counterclaim

Pandya and CT Pizza seek leave to amend their Counterclaim to include six new causes of action: (1) breach of the covenant of good faith and fair dealing; (2) fraud claim; (3) breach of fiduciary duty; (4) tortious interference with contract; (5) conspiracy, and (6) defamation.  In support of their motion, Counterclaimants first argue that no party will be prejudiced by the amendment.  With respect to the proposed fraud claim, Counterclaimants further point out that they pled a general claim of fraud in their original Answer (CM/ECF No. 40), which was only dismissed on consent so as to address Plaintiffs' arguments regarding the economic loss doctrine raised in their motion to dismiss.  Counterclaimants argue that Plaintiffs have been on notice of the fraud claim since the original Counterclaim was filed and therefore will not suffer any prejudice by the proposed amendment.  (Counterclaimants' Brief in Support ("CC's Br.") at 12-13.)

7

Counterclaimants likewise contend that they did not unduly delay in filing their amended Counterclaim.  Counterclaimants note that they obtained new counsel on October 27, 2015, who, having more experience in these types of matters, considered the facts pled and recognized certain causes of action that had always existed.  (CC's Br. at 15.)  Finally, Counterclaimants argue that the proposed new claims are not futile.  In particular, Counterclaimants argue that the fraud claim is pled with sufficient specificity so as to satisfy the pleading requirements of Rule 9(b), that the economic loss doctrine is not applicable to the proposed tort claims because there is no contractual relationship between Counterclaimants and Patel, and that the parol evidence rule applies to contract claims and therefore is inapplicable to the fraud claim against Patel, who is not a party to the contract.  (CC's Br. at 20-23.)

Plaintiffs oppose the motion arguing that Counterclaimants are seeking to add claims that could have been raised at the inception of the case, that their delay in filing the claims is dilatory and prejudicial, and that the claims are futile.  Contending that the proposed counterclaims sounding in tort and fraud are based on Plaintiffs' alleged failure to make capital contributions under an Operating Agreement, Plaintiffs maintain that Counterclaimants have failed to explain why these causes of action were not contained in the original pleading filed on August 11, 2015.  (Plaintiffs' Opposition Brief ("Pl's Opp'n Br.") at 1.)  Additionally, Plaintiffs contend that Counterclaimants' motion seeking leave to amend is nothing more than a desperate attempt to go back on an express

8

agreement between the parties dismissing the fraud claim.  (Id.)  Plaintiffs contend that if

the motion were granted at this late juncture, Plaintiffs will suffer severe prejudice and be

forced to spend significant time and resources litigating the new claims.

## DISCUSSION

Motions to amend pleadings are governed by Federal Rule of Civil Procedure

15(a).  Once a responsive pleading has been filed, "a party may amend its pleadings only

with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Leave to amend is generally granted unless there is:  (1) undue delay or prejudice; (2) bad

faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or

(5) futility.  Foman v. Davis, 371 U.S. 178, 182 (1962).  The ultimate decision to grant or

deny leave to amend is a matter committed to the Court's sound discretion.  See, e.g.,

Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1970).

A party seeking to amend the pleadings after the scheduling order deadline must

satisfy the requirements of Rule 16(b)(4)—the party must show good cause.  See

Fed.R.Civ.P. 16; Grasso v. Consolidated Rail Corp., No. 12-398, 2013 WL 3167761 at *5

(D.N.J. June 20, 2013); see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd., 148 F.

App'x 82, 85 (3d Cir. 2005) (good cause standard when determining the propriety of a

motion to amend after the deadline elapsed).  Whether "good cause" exists under Rule 16

rests primarily on the diligence, or lack thereof, of the moving party.  GlobespanVirata,

Inc. v. Texas Instruments, Inc., No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12,

2005).  In determining whether good cause exists, courts typically consider whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired.  See Stallings ex rel. Estate of Stallings v. IBM Corp., No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiff's motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline").

The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'").  For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,  556 U.S. 662 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)).  Given the liberal standard for the amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile."  See Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citations omitted).  Thus, "[i]f a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990) (emphasis added); see also 6 Wright, Miller & Kane Federal Practice and Procedure,

§1487 (2d ed. 1990).

## DECISION

The motion is denied in its entirety.  The case deals primarily with events that occurred nearly seven years ago and has been pending for nearly two years.  The deadline for filing motions to amend was August 14, 2015.  Most of the proposed amendments deal with facts or allegations that were known to the parties from the outset of the case.  The other "recent" defamation claims are in a sense a consequence of the continuing dispute between the parties and this very litigation.  Justice now requires that this case be timely decided on the merits.  This will be aided by case management that will finally move the case to completion.  Permitting the amendment of the pleading would dramatically alter the progress of the case and delay it substantially.  As Judge Martini concluded, "[Counterclaimants] raise a number of tort and fraud claims that could have been brought in the original answer" and to allow the addition of the "causes of action [would] expand the theory and, thus, the scope of the case."  (CM/ECF No. 81.)  For these reasons and those set forth below, the motion will be denied.  If the parties want to bring additional claims against each other, they are free to do so in another case.  Here, justice, law, and fairness cry out for a just and prompt resolution and mandate no further amendment.

### *The Proposed Amended Counterclaim*

The issue before the Court is whether Pandya and CT Pizza unduly delayed in seeking leave to amend and whether the proposed claims are futile.  For the reasons stated

11

below, Counterclaimants' motion for leave to amend is denied without prejudice to the filing of a new case relating to the six new claims sought to be asserted.

### (i)   Breach of covenant of good faith and fair dealing, breach of fiduciary duty, tortious interference with contract and civil conspiracy

Pandya and CT Pizza seek to amend their Counterclaim to include claims for breach of the covenant of good faith and fair dealing, breach of fiduciary duty, tortious interference with contract and civil conspiracy.  The Scheduling Order provided that any motion to amend be filed by August 14, 2015.  (CM/ECF No. 26.)  Because Counterclaimants are seeking leave to amend their pleading some ten months after the deadline to do so, they must satisfy the "good cause" requirement of Rule 16(b)(4).  See Fed.R.Civ.P. 16; Grasso, No. 12-398, 2013 WL 3167761 at *5 (D.N.J. June 20, 2013).

It seems clear that Counterclaimants knew, or should have known, of the information to state the proposed claims well in advance of the Scheduling Order deadline.  Indeed, the facts upon which Counterclaimants rely revolve around Pandya's relationship with Patel and Kishan as it related to their business dealings. These facts are essentially Pandya's version of the events, and hence the factual information on which the proposed amendments rely was known at the inception of this case, and certainly at the time he filed his first Answer and Counterclaim.  Counterclaimants concede that the causes of action they now seek to assert "were always there."  (CC's Br. at 14.) Counterclaimants do not offer any plausible justification as to why these claims weren't

asserted in the first instance.[8]  There is no reasonable explanation to overlook the delay.

Permitting the amendment at this late stage of the proceedings dramatically changes the complexion of the case and unfairly prejudices Plaintiffs.  Indeed, Judge Martini, on ruling on the motion to strike, found that Counterclaimants' "additional causes of action . . . expand the theory and, thus, the scope of the case."  (CM/ECF No. 81.)  He further found that "Pandya and CT Pizza raise a number of tort and fraud claims that could have been brought in the original answer."  (Id.)  Although the District Judge permitted the filing of the current motion in his June 2, 2016 Order, Counterclaimants nevertheless have failed to demonstrate good cause so as to permit leave to amend to add these newly identified causes of action, known to them since the beginning of the litigation, in a case which was commenced approximately 23 months ago.

### (ii) Fraud claim

In an effort to resolve the then pending motions, the parties agreed that Plaintiffs would withdraw the motion to transfer, Counterclaimants' fraud claim would be dismissed, and Plaintiffs would file an amended complaint.  The circumstances surrounding the parties' agreement regarding the possible re-pleading of the fraud counterclaim are greatly disputed.  According to counsel for Patel and Kishan, Plaintiffs

---

[8]In addressing the argument of undue delay, Counterclaimants state that their new counsel, which substituted in on October 27, 2015, shortly after Plaintiffs filed their Amended Complaint, "took a look at the central facts of this litigation and recognized certain causes of action that were always there."  (CC's Br. at 14.)  Perhaps so, however in the context of this case, this does not establish good cause.

entered into the Consent Order based upon express representations from Pandya and CT Pizza's counsel that the fraud counterclaim would <u>not</u> be re-pled and that new counterclaims would not be alleged.  (Certification of Justin A. Jacobs, Esq. ("Jacobs Certif.") at ¶ 14.)  In sharp contrast, Pandya and CT Pizza's then counsel states that Plaintiffs sought to have the fraud claim dismissed with prejudice but that Counterclaimants rejected that position.  (Affidavit of Kenneth Russell ("Russell Aff.") at ¶¶ 5-6.)  Ultimately, the parties submitted a Joint Stipulation and Consent Order ("Consent Order") memorializing their agreement.[9]

Irrespective of counsels' conflicting representations, the fact is the fraud claim was dismissed.  Unlike the claim pled in the original Answer which was a one sentence claim for "misrepresentation," the proposed new fraud claim is detailed and fact laden.  In other words, it may be seen as an entirely new cause of action.  Or maybe not.  Either way, there is no doubt that if the fraud amendment is permitted, it will lead to Rule 12 motion practice which could delay the case even more.  The Court finds that the addition of this counterclaim at this late stage of the proceedings would be improper and unduly delay a determination of liability.  For these reasons and those stated above, there is no basis or good cause to permit the amendment at this time.

---

[9]The Consent Order was entered on October 19, 2015.  The Consent Order provided that "in order to avoid further motion practice on these issues" the fraud counterclaim would be dismissed without prejudice.  (CM/ECF No. 50.)

### (iii) Defamation claim

The Scheduling Order provided that any motion to amend be filed by August 14, 2015. (CM/ECF No. 26.)   According to Counterclaimants, the events supporting their defamation claim occurred as recently as May and June 2016, long after the deadline to move to amend.  Specifically, Counterclaimants allege that on several instances in May and June 2016, Patel knowingly and repeatedly made false statements about Pandya to several individuals in the community, that he had filed thirteen racketeering claims against Pandya, that the charges were criminal, and that Pandya would be going to jail in a few weeks.  (CC's Br. at 8-9, 24-25; CM/ECF No. 86-3.)  Notwithstanding the fact that the alleged wrongs occurred some 10 months after the deadline for amending pleadings had passed, the Court will deny the motion to amend to include the defamation claim.

The allegations against Plaintiffs are broad and seem to stem from the litigation between the parties.  Discovery would be lengthy and inevitably would require the deposition of fact witnesses.  Furthermore, the proposed defamation claim demonstrates the very contentious relationship and bad feelings that exist between the parties.  It is conceivable that further skirmishes could occur between the parties leading to further attempts to amend.  It's too late.  It would derail this case.  It's different if the parties want to pursue the new claims by filing a new case.  Indeed, it is quite conceivable that the discovery related to the current defamation claim may reveal other information giving rise to additional causes of action.  From a case management perspective, it is not

feasible– in fact it is prejudicial– to the Plaintiffs to allow amendments to add

counterclaims every time it is discovered that a new claim exists.  Thus, granting leave to

add a new claim even if the alleged acts supporting the claim just occurred would thwart

the interest of justice in having long-standing and complex disputes resolved in a timely

way.  To extend discovery relative to a new claim for defamation, in a case with multiple

causes of action, which was commenced nearly 2 years ago, will undoubtedly result in

undue delay in the resolution of this matter.  The Court has an interest in the timely

resolution of cases before it, and prolonging this litigation by adding a new claim at this

late date is contrary to that interest.


### <u>CONCLUSION</u>

For the reasons set forth above, the motion for leave motion to amend the

Counterclaim filed by Pandya and CT Pizza is **denied.**  If appropriate, Pandya and CT

Pizza are permitted to file their counterclaims as a new action in state court, or federal

court if there is a basis for jurisdiction, asserting the claims that are the subject of this

motion.  Any such action should not be deemed barred by New Jersey's entire

controversy doctrine.  <u>See, e.g.</u>, <u>Aldrich Nine Assoc. v. Foot Locker Speciality, Inc.</u>, 306

Fed. Appx. 723, 726 (3d Cir. 2009).  This statement has no impact whatsoever on the

appropriate limitation period in which Counterclaimants must bring a new action for the

claims they seek to assert.  Counterclaimants are solely responsible for calculating any

16

limitation periods.

    s/Mark Falk                
**MARK FALK**
**Dated: November 22, 2016**        **United States Magistrate Judge**

17